COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ALMA RAMIREZ,                                               )

                                                                              )             
No.  08-03-00513-CR

Appellant,                          )

                                                                              )                   Appeal from the

v.                                                                           )

                                                                              )          
34th Impact District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20030D01967)

                                                                              )

 

 

O
P I N I O N

 

Appellant Alma
Ramirez appeals her conviction for unlawful possession of cocaine with intent
to deliver.  She was found guilty by a
jury and the jury assessed punishment of 6 years=
confinement and a $2,500 fine.  Appellant
raises three issues:  (1) the trial court
erred in admitting evidence related to the seized narcotics because the State
failed to adequately prove the chain of custody; (2) the evidence was legally
and factually insufficient to sustain the conviction; and (3) the evidence was
legally insufficient to prove venue in El Paso County, Texas.








About 3 a.m., on
September 25, 2002, El Paso County Sheriff=s
Deputy Raymundo Caranza stopped a maroon vehicle traveling westbound on
Interstate 10 just south of the Executive Center ramp.  Deputy Caranza stopped the vehicle because
its taillights were not on.  As he
approached the vehicle, he realized that no car lights were on, and he detected
a strong odor of marijuana and alcohol coming from the vehicle.  He asked the driver, the Appellant, to exit
the vehicle.  After Appellant failed
several field sobriety tests, Deputy Caranza arrested Appellant for suspicion
of intoxication, handcuffed her, and placed her in the patrol car.  Deputy Caranza remembered Appellant admitting
she had been drinking, smoking a little bit of marijuana, and consuming
cocaine.

Deputy Caranza
searched the center console of the vehicle and found a bag with folded papers
that contained a white powdery substance, which he believed was cocaine.  Deputy Caranza requested assistance from
other officers, and after their arrival, he continued to search the
vehicle.  During the subsequent search,
Deputy Caranza found more cocaine in a 

sandwich-sized plastic bag and bags
of marijuana in the glove box.  Specifically,
Deputy Caranza described what he found as Amany,
many zip lock bags@
containing white powder and one inch by one inch little squared zippy
bags.  The search also revealed a
marijuana cigarette in the ashtray and a marijuana cigarette and Valium in
Appellant=s
purse.  Based on his experience, Deputy
Caranza stated that zippy bags are used to sell or buy cocaine and a diamond
fold is paper folded in a certain way and is used to hold cocaine for
sale.  Deputy Caranza field tested the
white powder, and it tested positive for cocaine.  Deputy Caranza believed the amount of cocaine
found in the vehicle was excessive for personal use.  Appellant told Deputy Caranza she had the
narcotics and marijuana because she suffered from arthritis and was under
doctor=s care. 








Appellant had an
asthma attack in the back of the patrol car before Deputy Caranza was able to
perform a breath analysis.  Deputy
Caranza requested emergency assistance, and Appellant was transported to Las
Palmas Hospital.  At Las Palmas, Deputy
Caranza overheard Appellant tell doctors she had been drinking, consuming
cocaine, and smoking marijuana. 
Appellant was released from the hospital between 7 and 8 a.m.

Before taking
Appellant to the police station, Deputy Caranza had Appellant=s vehicle impounded.  Detective Michael Torres of the El Paso
County Sheriff=s
Department was called to the police station to assist with the case because of
the large amount of narcotics recovered. 
Deputy Caranza informed Detective Torres of the situation and showed
Detective Torres the evidence he seized from Appellant=s
vehicle.  Detective Torres testified,
based on his training and experience, that he knew cocaine was usually sold in
powder form, in half a gram or gram amounts, and in a diamond fold or some type
of plastic bag.  Detective Torres also
indicated that when he had seen sixty-five grams of cocaine, it was typically
for resale.  Detective Torres also
identified a diamond fold as a paper folded in such a way to hold cocaine.  After completing the necessary paperwork at
the station, Deputy Caranza turned over custody of Appellant and the evidence
to a first shift deputy.

Detective Hector
Lara is the evidence custodian for the El Paso Sheriff=s
Department and is responsible for checking evidence lockers and night
depository lockers.  When Detective Lara
removed the evidence from the night deposit locker, the evidence was packaged
in a smaller plastic bag and contained an evidence report naming Appellant as
the suspect.  Detective Lara taped the
top and bottom of the plastic bag and signed his initials to ensure no
tampering of evidence occurred.  He
placed the evidence in an envelope as DPS prefers, and then placed the envelope
in the evidence locker.  The day before
trial, Detective Lara took the envelope to the DPS lab to have the evidence
tested.  Detective Lara testified at
trial that the chain of evidence reports had not been altered since he had last
seen them and were exact copies of the originals.  








Ann Marie Falknor,
a controlled substance analyst with the Texas Department of Public Safety,
analyzed the evidence.  When the evidence
arrived at the DPS lab, it was packaged in smaller blue ziploc bags, placed
inside one large plastic bag, and the plastic bag was in the envelope.  Ms. Falknor separated the evidence into three
separate bags and placed the cause number, exhibit number, and her initials on
all three bags.  Falknor identified the
envelope as the one that she received the day before trial, containing the
evidence.  Ms. Falknor tested the
evidence and determined it was cocaine and weighed a total of 66.43 grams.  Ms. Falknor identified a copy of the
laboratory report with her findings.  

Appellant
testified that she had never seen nor did she know of the cocaine that was
found in her vehicle.  On the night in
question, Appellant recalled that she had dinner with her boyfriend, and after
dinner had an argument with him.  Her
boyfriend told her marijuana would be good for her arthritis, but she was not
aware that he had put the marijuana cigarette in her purse.  Appellant was upset by the argument, so she
drove around.  She surmised that at some
point during dinner her boyfriend went out to her car and placed all the evidence
in her vehicle.  Appellant kept her
insurance in her glove box and perfume in the middle console, but said she did
not know the drugs were in either place. 
Appellant said she had never used cocaine or smoked marijuana, but she
did admit to taking Valium to help with her menopause.  Appellant testified that Deputy Caranza was
lying when he said:  (1) she was at the
Briar Patch on the night in question; (2) she admitted she had Adone@
cocaine and smoked marijuana on the night she was arrested; (3) she said she
was taking marijuana to help with her arthritis; and (4) he asked for her
driver=s license
and insurance.  Appellant conceded there
was a marijuana cigarette in her ashtray, but she said her boyfriend had smoked
the marijuana, not her.

 








Venue

In Issue Three,
Appellant contends the evidence was legally insufficient to prove venue in El
Paso, County, Texas.  Specifically, she
contends the State did not provide evidence to prove the alleged offense took
place in El Paso County.  

Venue is presumed
to have been proven at trial unless venue is made an issue at trial or the
record affirmatively shows otherwise.  Tex.R.App.P. 44.2(c)(1); Valdez v.
State, 993 S.W.2d 346, 349 (Tex.App.--El Paso 1999, pet. ref=d); Lozano v. State, 958 S.W.2d
925, 929 (Tex.App.--El Paso 1997, no pet.). 
A defendant=s plea of
not guilty does not automatically put venue at issue.  See Holdridge v. State, 707 S.W.2d 18,
20-1 (Tex.Crim.App. 1986); Black v. State, 645 S.W.2d 789, 790
(Tex.Crim.App. 1983).  Venue is not a Acriminative fact@
and thus not an element of the offense, so it need only be proven by a
preponderance of the evidence.  Lozano,
958 S.W.2d at 929; Valdez, 993 S.W.2d at 349.  Proof of venue may be established through
direct or circumstantial evidence.  Black,
645 S.W.2d at 790; Lozano, 958 S.W.2d at 929; Valdez, 993 S.W.2d
at 349.  As a general rule courts will
take judicial notice of the location of a particular town or city and that town
or city is the county seat of such county. 
Black, 645 S.W.2d at 791.








Appellant did not
challenge venue in the trial court. 
Therefore, the issue is presumed proven at trial unless the records
affirmatively shows otherwise.  In this
case, the evidence report admitted into evidence identified the location of the
stop at Interstate 10 in El Paso, Texas. 
Courts can take judicial notice that El Paso, Texas is the county seat
of El Paso County, and this is sufficient to establish venue in El Paso
County.  Contrary to Appellant=s contentions, there is no evidence in
the record to affirmatively rebut that the offense took place in El Paso
County.  Therefore, Issue Three is
overruled.  

Chain
of Custody

In Issue One,
Appellant contends the trial court erred by admitting evidence relating to the seized
narcotics because the State failed to prove a chain of custody.  Specifically, she argues the State failed to
prove the cocaine allegedly seized was the same as that analyzed in the DPS
lab.

Standard
of Review

Before physical
evidence is admitted, it must be identified by Aevidence
sufficient to support a finding that the matter in question is what its
proponent claims.@  Tex.R.Evid.
901(a).  Rule 901 does not require the
State to prove anything, but only requires a showing that satisfies the trial
court that the matter in question is what the State claims.  Silva v. State, 989 S.W.2d 64, 67-8
(Tex.App.--San Antonio 1998, pet. ref=d);
Garner v. State, 939 S.W.2d 802, 805 (Tex.App.‑‑Fort Worth
1997, pet. ref=d).  Absent abuse of discretion, the trial court=s decision to admit evidence should not
be overturned.  Prystash v. State,
3 S.W.3d 522, 527 (Tex.Crim.App. 1999); Smith v. State, 683 S.W.2d 393,
405 (Tex.Crim.App. 1984); Anderson v. State, 621 S.W.2d 805, 809‑10
(Tex.Crim.App. 1981).  Evidence should be
admitted if the trial court found that a reasonable juror could find that the
evidence was authenticated.  Pondexter
v. State, 942 S.W.2d 577, 586 (Tex.Crim.App. 1996); Pena v. State,
864 S.W.2d 147, 152 (Tex.App.‑‑Waco 1993, no pet.)(Op. on reh=g); Coleman v. State, 833 S.W.2d
286, 289 (Tex.App.‑‑Houston [14th Dist.] 1992, pet. ref=d).








Proof of the
beginning and end of the chain of custody will support admission barring any
evidence of tampering or alteration.  Stoker
v. State, 788 S.W.2d 1, 10 (Tex.Crim.App. 1989) cert. denied, 498
U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); Hall v. State, 13
S.W.3d 115, 120 (Tex.App.--Fort Worth 2000, pet. ref=d,
as improvidently granted).  The chain of
custody is conclusively proven if an officer is able to identify that he or she
seized the item of physical evidence, put an identification mark on it, placed
it in the property room, and then retrieved the item being offered on the day
of trial.  Stoker, 788 S.W.2d at
10.  Without affirmative evidence of
tampering or commingling, minor theoretical breaches in the chain of custody
will not affect admissibility.  Stone
v. State, 794 S.W.2d 868, 870 (Tex.App.--El Paso 1990, no pet.); DeLeon
v. State, 505 S.W.2d 288, 289 (Tex.Crim.App. 1974); Moore v. State,
821 S.W.2d 429, 431 (Tex.App.--Waco 1991, no pet.).  Gaps in the chain of custody generally go to
weight of the evidence in question, not its admissibility.  Lagrone v. State, 942 S.W.2d 602, 617
(Tex.Crim.App. 1997).  If the Appellant
shows the possibility of tampering, but does not show conclusive tampering,
such information goes to the weight of the evidence, not its admissibility.  Darrow v. State, 504 S.W.2d 416, 417
(Tex.Crim.App. 1974).  Moreover,
conflicting testimony as to the type of container evidence is placed in does
not amount to a break in the chain.  Stoker,
788 S.W.2d at 10.

Evidence








The record shows
that Deputy Caranza stopped Appellant because her vehicle lights were not
on.  Deputy Caranza arrested Appellant
for suspicion of intoxication, after she failed several field sobriety tests,
and placed her in the back of his patrol unit. 
He then searched her vehicle. 
During the initial search, Deputy Caranza found a bag with folded
papers, which contained a white powdery substance, in the middle console.  An additional search yielded more white
powder and bags of marijuana in the glove box, as well as many small ziploc
bags.  A field test of the white powder
revealed it was cocaine.  After returning
to the police station and completing all the necessary paperwork, Deputy
Caranza turned custody of the evidence and Appellant over to the first shift
deputy.  Deputy Caranza testified as to
his findings at trial, and his signature appears on the evidence report.

Deputy Caranza=s testimony indicates he was the
seizing officer and took the initial steps to ensure the proper chain of
custody was developed.  Based on his
testimony, a reasonable juror could have determined Deputy Caranza properly
followed procedure by placing the seized narcotics, identified at the scene as cocaine,
into the possession of the first shift deputy. 
According to the chain of evidence report admitted into evidence, that
officer, Deputy Louis Santibanez, evidently dropped the evidence in the night
depository locker.  Appellant argues that
Deputy Caranza did not testify to having put identifying marks on the evidence,
did not identify the deputy to whom he turned over the evidence, and did not
testify as to whether that deputy placed identifying marks on the evidence and
placed it in the evidence locker.  We
agree that Stoker provides a way for the State to prove conclusively the
chain of custody.  However, Stoker
does not require the State to prove the chain in only one manner.  While the better practice would have been for
Deputy Caranza or the depositing deputy to testify as to the identifying marks
he placed on the evidence, under the abuse of discretion standard that we must
employ, we find that a reasonable juror could have found that the evidence was
sufficiently authenticated by Deputy Caranza=s
testimony, particularly given the positive field test of the evidence. 








Appellant further
claims that there was evidence of tampering because there was a change in the
evidence from the time it was seized to the time it was presented to Ms.
Falknor at the DPS lab for testing. 
However, a change in the container evidence is stored in does not
constitute a break in the chain of custody. 
Stoker, 788 S.W.2d at 10. 
Appellant points to the description of the evidence at the time of
seizure and the description of the evidence upon arrival at the DPS lab as
proof it was tampered with or altered at some point in between.  We disagree. 
When Deputy Caranza field tested the evidence on the night of the
seizure, the evidence tested positive for cocaine.  A lab test of the evidence performed by Ms.
Falknor also tested positive for cocaine. 
The evidence did not change in composition; it was simply held in
different containers.  Appellant points
to no affirmative proof of tampering or alteration.  Barring such a showing, the beginning and end
of the chain of custody were sufficiently proven.  Consequently, we find no abuse of discretion
by the trial court.  Therefore, Issue One
is overruled.  

Sufficiency
of the Evidence

In Issue Two,
Appellant contends the evidence is legally and factually insufficient to
support her conviction.  Specifically,
Appellant contends the record is devoid of evidence that she actually intended
to sell or deliver the cocaine. 
Appellant also claims the State=s
evidence alone was too weak to prove beyond a reasonable doubt that she had the
requisite intent to deliver, and thus her conviction cannot stand.  Further, she claims that the State produced
contrary evidence to prove she was likely a user, not a seller, of cocaine,
such that the 

beyond-a-reasonable-doubt standard
as to her intent to deliver could not have been met.  

Standards
of Review








When examining the
legal sufficiency of the evidence, the court is to consider the evidence in the
light most favorable to the verdict to determine if any rational trier of fact
could have found guilt beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Lacour v. State, 8
S.W.3d 670, 671 (Tex.Crim.App. 2000).  If
the evidence is found legally insufficient, a judgment of acquittal must be
rendered.  Clewis, 922 S.W.2d at
133.  The court is to consider all the
evidence, whether admissible or inadmissible. 
Wilson v. State, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999); Johnson
v. State, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998).  The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given testimony.  Wesbrook v. State, 29 S.W.3d 103, 111
(Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App.
1996).  Any inconsistencies are resolved
in favor of the verdict.  Matson v.
State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); Moreno v. State,
755 S.W.2d 866, 867 (Tex.Crim.App. 1988). 
The reviewing court is to view the evidence as it is already weighted by
the jury and may not substitute its judgment for that of the fact finder.  Adelman, 828 S.W.2d at 421-22; Jordan
v. State, 139 S.W.3d 723, 725 (Tex.App.BFort
Worth 2004, no pet.). 








When considering
whether the evidence is factually sufficient, the court is to review the
evidence in a neutral light and determine if the jury was rationally justified
in finding guilt beyond a reasonable doubt. 
Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004); see
also Clewis, 922 S.W.2d at 129. 
There are two ways the evidence can be factually insufficient: (1) the
evidence when considered by itself is too weak to find guilt beyond a
reasonable doubt; or (2) contrary evidence is strong enough such that the
beyond-a-reasonable-doubt standard could not have been met.  Zuniga, 144 S.W.3d at 484-85.  This standard acknowledges that evidence
supporting guilt can Aoutweigh@ contrary evidence but still be
factually insufficient under a beyond-a-reasonable-doubt standard.  Id. at 485.  Appellate courts must give proper deference
to the jury=s
findings and find the evidence factually insufficient only to prevent a
manifest injustice.  Cain v. State,
958 S.W.2d 404, 407 (Tex.Crim.App. 1997). 
A proper factual sufficiency review must include a discussion of the
most important and relevant evidence that supports the Appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex.Crim.App. 2003).  

Possession
of Cocaine with Intent to Deliver

A person commits
an offense if the person knowingly manufactures, delivers, or possesses with
intent to deliver a controlled substance listed in Penalty Group 1.  Tex.Health
& Safety Code Ann. '
481.112(a)(Vernon 2003).  An offense
under Subsection (a) is a felony of the first degree if the amount of the
controlled substance to which the offense applies is, by aggregate weight,
including adulterants or dilutants, four grams or more but less than 200
grams.  Tex.Health
& Safety Code Ann. '
481.112(d).  Penalty Group 1 consists of
cocaine.  Tex.Health & Safety Code Ann. '
481.102(3)(D)(Vernon Supp. 2004-05).

Intent is a question
of fact to be determined by the trier of fact. 
Ingram v. State, 124 S.W.3d 672, 676 (Tex.App.--Eastland 2003, no
pet.).  Intent to deliver can be proven
by circumstantial evidence, such as:  (1)
the amount of the controlled substance possessed; (2) the manner in which it
was possessed; (3) the manner of packaging; (4) the presence of the accused in
a drug house; (5) the nature of the location where the defendant was arrested;
(6) the presence or absence of drug paraphernalia (for use or sale); (7) the
amount of cash the defendant possessed in addition to the drugs; and (8) the
defendant=s status
as a drug user.  See Ingram, 124
S.W.3d at 675-76; Taylor v. State, 106 S.W.3d 827, 831 (Tex.App.‑‑Dallas
2003, no pet.); Jordan v. State, 139 S.W.3d 723, 726, (Tex.App.‑‑Fort
Worth 2004, no pet.).  Expert testimony
may be introduced to prove intent to deliver. 
Jordan, 139 S.W.3d at 726.

 








Evidence

First, Appellant
challenges the legal sufficiency of her conviction.  Specifically, Appellant contends that the
State did not prove she intended to deliver the cocaine found in her vehicle.

Appellant=s intent to deliver was established by
circumstantial evidence.  Appellant was found
with 66.43 grams of cocaine in her vehicle, as well as marijuana and
Valium.  In addition to the amount of
cocaine found in her possession, Deputy Caranza found diamond folds and
nineteen small plastic bags also filled with cocaine.  Deputy Caranza indicated that in his
experience diamond folds and small plastic bags filled with cocaine are the
manner in which sellers of cocaine carry the drug.  Detective Torres indicated cocaine sellers
might have diamond folds, plastic bags, and the amount of cocaine found in
Appellant=s
vehicle.  Detective Torres also indicated
the typical sale of cocaine is a half a gram to one gram, and the cocaine is
typically sold in powder form--it was found in powder form in Appellant=s vehicle.  Detective Torres believed that the amount of
cocaine seized from Appellant=s
vehicle was in excess of the amount one would possess for personal use.








Appellant argues
that the testimony of Deputy Caranza and Detective Torres was not evidence,
simply two people stating their personal belief.  However, the jury was free to accept or
reject the officers=
opinions, and we will not reevaluate the credibility of these witnesses on
appeal.  Likewise, the jury, as sole fact
finder, could choose to disregard Appellant=s
testimony denying knowledge of the cocaine found in her vehicle.  As further evidence that she did not have the
requisite intent to deliver, Appellant points to the evidence that was not
found in her vehicle, such as large amounts of cash, scales, or agents used to
cut cocaine, and points to the fact that vehicles are not normally a place used
by drug dealers.  Courts have provided
examples of circumstantial evidence that may indicate a person=s intent to sell, but the trier of fact
need not find every indicator in order to find a person had the intent to
deliver. 

Appellant argues
that at most, the State proved that she is a user of cocaine, however, as
discussed above, there is a significant amount of circumstantial evidence in
this case, including the amount of cocaine seized, the plastic bags, and the
diamond folds to prove Appellant=s
intent to deliver.  Considering all the
circumstantial evidence in this case, a rational trier of fact could have found
Appellant had the requisite intent to deliver and thus found Appellant guilty
beyond a reasonable doubt.

Appellant also
contends the evidence was factually insufficient.  Specifically, she argues the State=s evidence when viewed alone is too
weak to prove she intended to deliver the cocaine found in her vehicle.  She also claims the State=s evidence when coupled with her own
testimony cannot prove beyond a reasonable doubt that she intended to sell the
cocaine found in her vehicle.  We
disagree.








There was ample
evidence to show Appellant=s
intent to deliver.  Deputy Caranza found
66.43 grams of cocaine in Appellant=s
vehicle.  Deputy Caranza and Detective
Torres both testified that in their experience, the amount of cocaine seized,
as well as the fact that diamond folds and plastic bags were found, indicated
the person who possessed such items was a seller of cocaine.  Appellant argues that the evidence at most
establishes that she is a drug user and not a seller.  She points to the fact that Deputy Caranza
did not see her deliver any cocaine.  She
also points to the evidence that she was intoxicated, as evidence that she was
a user and not a seller.    However, the
circumstantial evidence presented at trial was not too weak that a jury could
not have found the element of intent to deliver beyond a reasonable doubt.  

Next, Appellant
contends contrary evidence was presented and was strong enough as such that the
beyond-a-reasonable-doubt standard could not have been met.  Appellant points to Detective Torres=s concession that the amount of cocaine
seized from Appellant could be used by one person over a number of weeks,
though he considered it to be excessive for personal use.  Appellant argues this is evidence she is a
user and not a seller.  However,
Detective Torres=s
testimony clearly indicated his opinion that she was a seller.  Appellant also points to her testimony that
she had no knowledge that the cocaine was in her vehicle.  However, according to Deputy Caranza, he
asked her for her insurance, which was in the glove box.  Apparently, the fact finder resolved the
conflicting evidence in favor of the State. 
See Cain, 958 S.W.2d at 410. 

We conclude that
the evidence is legally sufficient to sustain her conviction, that is, viewing
the evidence in the light most favorable to the verdict, a rational jury could
have found Appellant possessed cocaine with the requisite intent to deliver,
and thus find Appellant guilty beyond a reasonable doubt.  After considering all the evidence in the
neutral light, we conclude the evidence supporting the verdict alone is not too
weak to support the guilty finding beyond a reasonable doubt nor is the
contrary evidence strong enough such that the beyond-a-reasonable-doubt
standard could not have been met.  Having
found the evidence is legally and factually sufficient to sustain Appellant=s conviction, we overrule Issue
Two.  

Accordingly, we
affirm the trial court=s
judgment.

 

August
18, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)