JORDAN V. STATE

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-038-CR

PATRICK JORDAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

Appellant Patrick Jordan appeals from his conviction for possession of a controlled substance with intent to deliver.  In two issues, he contends the evidence is legally and factually insufficient to prove intent to deliver.  We affirm.

Factual Background

On November 11, 2000, Officer Stephen Myers observed a car make a right turn without signaling.  Officer Myers began to follow the car, which was going “extremely fast.”  After turning onto another street, the car pulled over to the right side of the road, and appellant got out.  The car then continued down the street.

As Officer Myers passed appellant, he saw appellant drop a plastic baggie about the size of a small softball on the street.  The baggie had white chunks inside it.  Appellant and Officer Myers were both traveling eastbound on the street.  Officer Myers turned around and parked his car facing westbound. Appellant had changed directions and was now walking westbound.  Officer Myers saw appellant pick up the baggie off the street.

As Officer Myers approached appellant on foot, appellant put the baggie in his right hand and then put his right hand in front of his pants waistband. Officer Myers told appellant to stop and take his hands away from his waistband.  Officer Myers had to repeat his command two or three times before appellant complied.  Officer Myers shook appellant’s waistband, and the baggie fell out of his pants.  Appellant said the baggie did not belong to him.  Appellant was not carrying any weapons.

The baggie contained fourteen capsules with white powder, which were later determined to be cocaine, and sixteen capsules with brown powder, which were later determined to be heroin.  It also contained two smaller bags containing crack cocaine.  The total amount of cocaine powder in the fourteen capsules weighed about 1.65 grams, and the total amount of heroin in the sixteen capsules weighed about 1.94 grams.  One of the smaller bags contained about .17 grams of crack, and the other contained about .28 grams. 

At appellant’s trial, Officer Myers testified that the area in which he stopped appellant was a high crime area and that drug houses were typically located on that street.  He testified that it is common to package narcotics in baggies and in capsules.  Officer Bruce Blaisdell, a narcotics officer with the Fort Worth Police Department, also testified that he had seen cocaine and heroin sold in capsule form before.  Each capsule is generally sold for about $10.  Officer Blaisdell said it is common to find a drug dealer with a variety of drugs in his possession because not all customers want to buy the same drugs. 

Officer Blaisdell testified that the fourteen cocaine capsules were worth about $140, the sixteen heroin capsules were worth about $160, and the two bags of crack were worth about $30 to $35.  Thus, appellant was carrying approximately $330 to $335 worth of drugs.  Officer Blaisdell also testified that typical drug users buy only one to four capsules at a time and that they do not normally buy large quantities because they do not want to be caught with that much.  Officer Blaisdell testified that in his eleven years with the Fort Worth Police Department, six of which were in narcotics, he had never seen a mere user possess that amount of drugs. 

Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Burden v. State
, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001).  This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  When performing a legal sufficiency review, we may not sit as a thirteenth juror, re-evaluating the weight and credibility of the evidence and, thus, substituting our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).

To make a determination of factual insufficiency, a complete and detailed examination of all the relevant evidence is required.  
Johnson v. State
, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000).  A proper factual sufficiency review must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

The court of criminal appeals has recently restated and clarified the standard of review to be used by appellate courts in reviewing the factual sufficiency of the evidence to support a conviction.  In 
Zuniga v. State
, the court held

There is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?  However, there are two ways in which the evidence may be insufficient.  First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt.  Second, there may be both evidence supporting the verdict and evidence contrary to the verdict.  Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand.  This standard acknowledges that evidence of guilt can “preponderate” in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.  Stated another way, evidence supporting guilt can “outweigh” the contrary proof and still be factually insufficient under a beyond-a- reasonable-doubt standard.

Zuniga v. State
, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004).

Analysis

Appellant contends that the evidence is legally and factually insufficient to prove intent to deliver in that the only evidence tending to prove his intent is Officer Blaisdell’s opinion that the quantity of drugs possessed by appellant indicated an intent to deliver.  Intent to deliver can be proven by circumstantial evidence.  
See Rhodes v. State
, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), 
aff’d
, 945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997); 
Williams v. State
, 902 S.W.2d 505, 507 (Tex. App.—Houston [1
st
 Dist.] 1994, pet. ref’d); 
Reece v. State
, 878 S.W.2d 320, 325 (Tex. App.—Houston [1
st
 Dist.] 1994, no pet.).  Courts have considered several factors in determining intent, including:  (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging of the drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5) whether the defendant possessed a large amount of cash in addition to the drugs; and (6) the defendant’s status as a drug user.  
Williams, 
902 S.W.2d at 507
; Reece
, 878 S.W.2d at 325.  Expert testimony may be introduced to prove intent to deliver.  
See
 
Bryant v. State
, 997 S.W.2d 673, 675 (Tex. App.—Texarkana 1999, no pet.); 
Rhodes
, 913 S.W.2d at 251; 
Mack v. State
, 859 S.W.2d 526, 529 (Tex. App.—Houston [1
st
 Dist.] 1993, no pet.); 
Branch v. State
, 833 S.W.2d 242, 244-45 (Tex. App.—Dallas 1992, pet. ref’d).  

Here, appellant was arrested in a high crime area where drug houses were located.  While he did not possess any drug paraphernalia indicating an intent to sell, he also did not possess any indicating an intent to use.  Two officers testified that the packaging of the drugs, in capsule form and in individual bags, indicated an intent to sell.  Appellant possessed three different kinds of drugs.  Finally, an experienced narcotics officer testified that the amount of drugs possessed by appellant indicated an intent to sell.  

The dissent argues that these facts are as consistent with an intent to possess as an intent to deliver.
(footnote: 1)  However, 
in determining the legal sufficiency of the evidence to show appellant’s intent and faced with a record that supports conflicting inferences, we “must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.”  
Matson v. State
, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  Even reviewing the evidence in a neutral light, as required by the factual sufficiency standard of review, the evidence is not so weak that it cannot support the verdict of guilt beyond a reasonable doubt, nor 
is there evidence to the contrary that is so strong as to render it impossible for the jury to have found appellant’s guilt beyond a reasonable doubt. 

Based on our review of the record and applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the jury’s verdict.  We overrule both of appellant’s issues on appeal.

Having overruled appellant’s issues, we affirm the trial court’s judgment.

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  June 17, 2004

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-038-CR

PATRICK JORDAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

I respectfully dissent from the majority’s considered and thoughtful opinion holding the evidence sufficient to show an intent to deliver.  There was no evidence that Appellant did anything to exhibit an intent to deliver the controlled substance in his possession. 

Appellant was a passenger in a car traveling in an area of drug houses.   The only testimony that could possibly be construed as evidence going to the specific intent element of the offense came from Officer Blaisdell, who testified that he did not know Appellant and was not present when he was arrested.  Officer Blaisdell therefore was not a fact witness to the alleged offense.
(footnote: 1)  On direct examination, Officer Blaisdell testified as follows, in pertinent part:

Q. Now, in your experience and training as a  narcotics officer, is it common or uncommon to find a dealer with several different types of drugs in their possession?  

A. Very common.  

Q. And why do they carry several different types of drugs?

A. When they are out there dealing, if a customer asks for a specific kind of drug, obviously the more various kind that you carry, the more opportunities you have to sell it, and pretty much the only difference between crack cocaine and powdered cocaine is that powdered cocaine is heated and they add some baking soda and some cut, which turns it into a rock form, so if you are already selling powder, it's very easy to make up just a little bit of crack as well.

Q. Okay.  Now, the 14 caps at $10.00 for a $140.00 worth of cocaine, is that an amount that is typically possessed by a person who would use that for personal use or someone who had the intent to deliver?  

A. It's typically possessed by someone who intends to sell.

Q. And what about the 16 caps of heroin, would that be someone who is possessing that for personal use or would they be possessing that for the intent to deliver?

  

A. Also, it's an indicator that they possess that with the intent to sell. 

Q. Typically how much would you find on a user of capsules?

A. Average user, just from the houses that we set on that actually sell capsules of heroin and coke, we usually find anywhere from one to probably four on the average buyer after he leaves the house. 

Q. So one to four caps are usually on a user?  

A. Yes, ma'am.  

Q. Do users usually buy large quantities like this?  

A. No, ma'am.  

Q. Do you know why?  

A. The main reason is that narcotics are expensive and if you are a user, you are an addict, you are having to put out money for them every single day, so you can imagine if you are spending 30 to $40.00 a day, it gets to be a very expensive habit, and so usually they don't have enough money but to buy just a few capsules at a time, and the other reason is you don't want to get caught with it because, obviously, it's against the law, so typically they buy just what they need.

On cross-examination, Blaisdell’s testimony continued:

Q. Officer Blaisdell, most of your answers started off with typically or usually.  
You can't testify with any certainty about what [Appellant] was  doing, right
?  

A. I can only say I have never seen a user with that amount.  

Q. 
But you can't tell the jury that the amount that [Appellant] allegedly had on him was intended to be delivered, because you don't know, do you? 

 

A. 
I do not. 

[Emphasis added.]

Officer Myers, the arresting officer, testified that cocaine and heroin were sold in capsule form on occasion.  He also testified:

Q. Okay.  Do you recall if there were any people out that day? 

A. I don't recall anyone near the vicinity where he was at.  

. . . .

Q. I'm going to assume that the jury does not know what the term "drug house" means.  Can you explain what that is?  

A. If it's what we are referring to, which I believe a drug house, basically it's a house where the cell [sic] of narcotics is going on and it is active, it is not where they are selling from the street, walking around dealing outside; it is where people go up to the front door to the house and they sell the drugs that way.  

Officer Myers explained that if a dealer sold from a drug house, he would remain inside the house and customers would come to the door.  Clearly, Appellant was not inside a house or, according to Officer Myers, even in the yard near a drug house.
  Rather, he was on the sidewalk.  If one does not sell from a drug house, one sells on the street.  But Officer Myers testified that no one was near Appellant.  Nor is there any evidence from any source that Appellant did anything to manifest an intent to deliver. 

Although Officer Blaisdell testified that he had never seen a mere user possess that amount of drugs, his testimony is not evidence that Appellant was not a mere user.  Additionally, the evidence shows a minimum of two people in the automobile that Appellant got out of.  Appellant’s joint possession of the drugs with the other person or persons in the car is consistent with the evidence.  Furthermore, the evidence is not inconsistent with Appellant’s spending his whole paycheck on drugs.  

There are no facts to support a finding of an intent to deliver.  Officer Blaisdell could have testified that in his experience people who jumped out of cars have just committed murder or sexual assault.  By the majority’s reasoning, this testimony would constitute evidence of murder or sexual assault.  If he had testified that people only jump from cars when they intend to deliver contraband in their possession, would the majority hold this testimony was sufficient evidence of intent to deliver?

Possession of a controlled substance with intent to deliver is a delivery offense.
(footnote: 2)  If the legislature had intended possession of more than a minimum amount of drugs to constitute a delivery offense, the legislature would have written that intention into the delivery statute.  Instead, the legislature chose to assess a higher punishment for possession of increased amounts of controlled substances.
(footnote: 3)  Delivery offenses contain an additional mens rea, the specific intent to deliver.
(footnote: 4)  It is true that specific intent can be inferred from circumstantial evidence and a defendant’s conduct.
(footnote: 5)  However, the Texas Court of Criminal Appeals defines 
circumstantial evidence
 as “direct proof of a secondary fact which, 
by logical inference
, demonstrates the ultimate fact to be proven."
(footnote: 6)  Blaisdell’s testimony is not direct proof of any facts concerning Appellant or the offense.  It is direct proof, at most, that in Blaisdell’s limited experience, persons possessing the amount and variety of drugs possessed by Appellant were dealers, not users. 

The legislature has clearly mandated a difference between the ability to deliver contraband and the intent to deliver.  While a person may possess a large amount of a controlled substance, and while that controlled substance may be packaged in such a way as to make it convenient to sell (and therefore buy), the mere fact that a person could sell the controlled substance without great inconvenience to himself is not evidence that he has the intent to deliver it.  

There is no evidence that Appellant carried any empty capsules to be filled, that he possessed any small baggies for packaging small amounts of contraband, or that he was doing anything to exhibit an intent to deliver.  There is no evidence that he had set himself up in a drug house or on a street corner where drugs were habitually sold.  There is no evidence that he attempted to pass off contraband to another person or that he had arranged to act as a go-between for two persons interested in a drug transaction.  Aside from Officer Blaisdell’s speculation, the only evidence is that Appellant jumped from a car, dropped a mixed bag of contraband, and tried to ignore a police officer.

To reach the ultimate fact that Appellant specifically intended to deliver drugs at the time Myers spotted him, we would have to infer that Appellant is a typical person holding that amount and variety of drugs as described by Blaisdell.  Based upon that inference, we would then have to infer that Appellant is a drug dealer.  Based upon that inference, we would then have to  make a final inference that Appellant intended to deliver the drugs in his possession at the time Myers spotted him.  Such stacked inferences do not rise to the level of sufficient evidence in our justice system.
(footnote: 7)  If they did, the presumption of innocence would be turned on its head because a statistician could testify in every criminal case about the percentages of guilty versus not guilty verdicts, and from that testimony, juries could infer guilt in all cases with no direct or circumstantial evidence of it in the actual case before them.

An additional problem with the State’s proof is that there is no evidence of what percentage of the contraband Appellant intended for his own use as opposed to delivery.  Even Blaisdell’s speculation does not fill in this gap.  Appellant was charged with intent to deliver one to four grams of cocaine and one to four grams of heroin.

Because there is nothing other than Officer Blaisdell’s speculation to support the element of intent to deliver, I would hold that the State has failed to prove that element.  For these reasons I must respectfully dissent from the majority’s holding that the evidence is sufficient to show an intent to deliver.

However, because the evidence is legally and factually sufficient to support Appellant’s conviction for the lesser included offenses of possession of one to four grams of heroin and possession of one to four grams of cocaine, and because the jury was charged on these offenses, I would reform the judgment to reflect such conviction and remand the case for a punishment hearing.

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED:  June 17, 2004

FOOTNOTES
1:
The dissent contends that if the legislature had intended for possession of more than a minimum amount of drugs to indicate intent to deliver, it would have included that intention in the delivery statute.  However, it also follows that if the legislature had intended that an intent to deliver could be inferred only if a person possessed a particular quantity of drugs, it would have said so.  In the absence of such a legislatively created rule, we decline to impose one.

1:
See Hampton v. State
, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (holding that “it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence 
directly germane 
to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted”) (emphasis added); 
Skinner v. State
, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (holding same), 
cert. denied
, 523 U.S. 1079 (1998). 

2:
See
 
Tex. Health & Safety Code Ann.
 § 481.112 (Vernon 2003).

3:
Id.
 § 481.115.

4:
Id.
 § 481.112.

5:
Maldonado v. State
, 998 S.W.2d 239, 243 (Tex. Crim. App. 1999).

6:
Taylor v. State
, 684 S.W.2d 682, 684 (Tex. Crim. App. 1984) (emphasis added).

7:
Ingram v. United States,
 360 U.S. 672, 680, 79 S. Ct. 1314, 1320 (1959) (citing 
Direct Sales Co. v. United States,
 319 U.S. 703, 711, 63 S. Ct. 1265, 1269 (1943)); 
United States v. Sultan
, 115 F.3d 321, 329 (5th Cir. 1997); 
Richardson v. State
, 834 S.W.2d 535, 537 (Tex. App.—Houston [1
st
  Dist.] 1992, pet. ref'd); 
see Marathon Corp. v. Pitzner
, 
106 S.W.3d 724, 728 & n.8 (Tex. 2003)
 (citing generally 
Lozano v. Lozano
, 52 S.W.3d 141, 148 (Tex. 2001); 
Hammerly Oaks, Inc. v. Edwards
, 958 S.W.2d 387, 392 (Tex. 1997); 
Cont'l Coffee Prods., Inc. v. Cazarez
, 937 S.W.2d 444, 450 (Tex. 1996); and 
Litton Indus. Prods., Inc. v. Gammage
, 668 S.W.2d 319, 324 (Tex. 1984)); 
see also
 
Ex parte Moussazadeh
, 
64 S.W.3d 404, 413 (Tex. Crim. App. 2001) (“These are too many inferences stacked upon each other to support a finding that it was the parties' clear intention that parole eligibility was an essential element of the plea bargain.”), 
cert. denied
, 537 U.S. 813 (2002).

COMMENTS AND ANNOTATIONS
Comment 1:
Majority by Justice Livingston; Dissent by Justice Dauphinot