# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00230-CR

**Seneka Deray Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 07-185-K277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Seneka Deray Johnson was convicted of two counts of possession of a controlled substance with intent to deliver and one count of evading arrest or detention with a motor vehicle. *See* Tex. Health & Safety Code Ann. §§ 481.112, .113 (West 2003); Tex. Penal Code Ann. § 38.04 (West 2003). The jury found to be true a penalty paragraph that Johnson had previously been convicted of a felony and assessed punishment at 40 years' imprisonment for each count of possession of a controlled substance with intent to deliver and two years' imprisonment for evading detention, to be served concurrently. Johnson appeals, asserting in two issues that the evidence is

both factually and legally insufficient to sustain the jury's verdict regarding the element of intent to deliver.[1]  We affirm the trial court's judgment.

**BACKGROUND**

On April 25, 2006, Deputy Troy Brogden of the Williamson County Sheriff's Office was patrolling a residential area of Williamson County when he observed a minivan traveling at the rate of 40 miles per hour in a 25 mile-per-hour zone.  Brogden pulled behind the vehicle and activated his overhead lights in order to initiate a traffic stop.  Rather than stopping the minivan, the driver accelerated and ran a stop sign.  Brogden then sounded his air horn and activated his siren, but the driver continued driving through the residential area.  As Brogden followed the minivan, he observed a passenger put his hands out the window, in a gesture that Brogden interpreted as "I give up."

A few moments later, the minivan came to a stop and the passenger, later identified as Reginald Jackson, jumped from the vehicle and held his hands in the air.  The minivan then accelerated and continued to drive through the neighborhood.  Several minutes later, Johnson exited from the driver's side of the moving vehicle.  Johnson jumped from the minivan into the path of

---

[1]  Appellant's brief states under "Summary of the Argument - Point of Error One" that the "State's case demonstrating that Appellant possessed the controlled substances involved was based solely on the weights involved."  Similarly, under "Summary of the Argument - Point of Error Two," the brief states that the "evidence demonstrating that Appellant possessed the controlled substance involved is so weak that the verdict should not stand, even if the Court considers the evidence legally sufficient."  However, the remainder of the brief, including the "Issues Presented," the "Points of Error," and the accompanying legal analyses, challenges only the sufficiency of the evidence regarding the intent-to-deliver element of the offense, rather than possession.  As a result, we will assume that Johnson intended to summarize his arguments as they are stated in the "Issues Presented" portion of the brief, challenging only the element of intent to deliver.

Brogden's patrol car, which struck Johnson with enough impact to knock his shoes off. After Johnson's exit, the minivan continued rolling down the street, struck another vehicle, jumped the curb, crossed a sidewalk, and eventually came to a stop when it hit a tree in the yard of a nearby residence.

After being struck by Brogden's car, Johnson began to run and Brogden pursued on foot, eventually apprehending Johnson as he was attempting to climb a fence. Brogden returned to his patrol car with Johnson, where several other deputies had arrived on the scene. One of these deputies, Deanna Lugo of the Williamson County Sheriff's Office, observed a purple Crown Royal bag lying in the street near the location where Johnson exited the minivan.[2] Inside the bag, the deputies found loose cocaine in powder form, additional powder cocaine in a plastic baggie, several pieces of crack cocaine in a plastic baggie, and a plastic baggie containing a brown vanilla extract bottle containing liquid phencyclidine, or "PCP."

The aggregate weight of the powder cocaine was 13.12 grams, while the aggregate weight of the crack cocaine was 4.33 grams. The vanilla extract bottle contained 13.72 grams of liquid phencyclidine.

At trial, the State called Brogden, as well as Joel Budge, a chemist with the Texas Department of Public Safety, to testify regarding the amount of drugs found in Johnson's possession. Brogden testified that prior to arresting Johnson, he had made other arrests and stops during which he found cocaine. Brogden testified that based on his training and experience, there was "quite a bit"

---

[2]  According to Brogden, he later discovered upon reviewing his patrol car video of the incident that Johnson was holding something in his right hand when he jumped from the minivan.

of powder cocaine in the Crown Royal bag and that he had stopped people in the past with significantly less cocaine in their possession. Based on the amount of cocaine found, Brogden stated, "I would say that [Johnson] was selling that." Brogden also testified that, based on his training and experience, crack cocaine users "usually have a pipe and just a little bit of a rock," and that crack cocaine that is intended for sale is generally not "packaged individually like a lot of other drugs." Brogden further testified that he did not find a crack pipe, Brillo pad, or any other objects typically used to ingest crack cocaine, on Johnson or in Johnson's vehicle.

Brogden testified that, based on his training and experience, phencyclidine is commonly ingested by dipping a marijuana cigarette into a mixture of phencyclidine and another liquid and then smoking the marijuana cigarette. Brogden testified that he did not find marijuana or marijuana cigarettes on Johnson or in Johnson's vehicle.

Budge testified that crack cocaine is typically sold in the form of a rock weighing between 0.1 and 0.2 grams. According to Budge, 4.33 grams of crack cocaine, the amount found in the Crown Royal bag, would produce between 20 and 40 standard-sized crack rocks. Budge also testified that rocks of crack cocaine are fragile and easily broken into smaller sizes. Budge acknowledged that it was conceivable that a heavy cocaine user could possess a large amount of cocaine solely for personal use.

Budge further testified that when powder cocaine is seized that was intended for personal use, "normally you do see utensils," such as a straw or pen tube used to snort the drugs, although "you can improvise some other device to be able to do it."

Budge also testified that liquid phencyclidine intended merely for personal use is typically packaged and carried in 1-2 milliliter vials, which are generally half an inch tall. He testified that the vanilla extract bottle recovered from the Crown Royal bag was larger than the standard size. The bottle found in Johnson's possession contained 13.72 grams of liquid phencyclidine. According to Budge, a typical dosage of phencyclidine is 5-10 milligrams. Budge testified that before phencyclidine is ingested, it needs to be diluted by some other substance, typically ethyl ether, "so that you can dilute it enough so that when you do dip your cigarettes in it, you don't overdose on it." Budge stated that there had "only been a few occasions" where he had received larger amounts of phencyclidine in his laboratory than the amount found in Johnson's possession. Budge had not done a quantitative analysis on the phencyclidine in question to determine how much it had been diluted, if at all.

The jury convicted Johnson of two counts of possession of a controlled substance with intent to deliver and evading arrest or detention in a motor vehicle.[3] Johnson's only issues on appeal are (1) that the evidence was legally insufficient to sustain the jury's verdict as to the element of intent to deliver and (2) that the evidence was factually insufficient to sustain the jury's verdict as to the element of intent to deliver.

## STANDARD OF REVIEW

In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found

---

[3] At trial, Johnson did not deny that the drugs contained in the Crown Royal bag had been in his possession. Instead, his defense was that the drugs were intended for personal use, rather than sale.

5

the essential elements of the offense beyond a reasonable doubt. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In determining factual sufficiency, we must weigh all the evidence in a neutral light, and may set the finding aside only if the evidence is so weak that the verdict seems clearly wrong or manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). An appellate court must be appropriately deferential to the jury's verdict, in order to avoid substituting its own judgment for that of the factfinder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). The jury is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *Id*. A factual sufficiency review must include an examination of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

## DISCUSSION

**Legal Sufficiency**

Johnson argues that the evidence is legally insufficient because the State relies solely on the weights of the drugs involved to suggest intent to deliver. Johnson emphasizes that the State did not present other types of evidence normally used to indicate an intent to deliver, such as a showing that the drugs were packaged in a manner that was indicative of their being prepared for sale, that he had a large amount of cash with him at the time of the arrest, that the chase and arrest occurred in an area known for drug trafficking, or that any portioning items, such as scales or

6

baggies, were present that would indicate the drugs were being held for future sale. Johnson asserts that because the State relies solely on the weights of the drugs involved and because no evidence was offered to show that Johnson did not possess the drugs for personal use, the evidence is legally insufficient to sustain the jury's verdict on the element of intent to deliver.

The element of intent to deliver may be proven by circumstantial evidence. *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.); *Gonzales v. State*, 761 S.W.2d 809, 815 (Tex. App.—Austin 1989, pet. ref'd). In determining the legal sufficiency of the evidence where the facts are as consistent with an intent to possess as with an intent to deliver, we must presume that the trier of fact resolved any such conflict in favor of the prevailing party. *Jordan*, 139 S.W.3d at 727.

Factors that may be considered in determining intent to deliver include the nature of the location of the defendant's arrest, the quantity of drugs possessed, the manner in which the drugs are packaged, the presence or absence of drug paraphernalia indicating use or sale, whether the defendant possessed a large amount of cash, and the defendant's status as a drug user. *Reed v. State*, 158 S.W.3d 44, 48-49 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Other factors that may be used to prove intent to deliver are the possession of multiple types of drugs, *Jordan*, 139 S.W.3d at 726, and attempts by the defendant to flee or evade arrest, *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

The number of factors present is less important than the logical force the factors have in establishing the elements of the offense. *Id.* In fact, possession of a large quantity of drugs alone can be legally sufficient evidence to show an intent to deliver in the presence of expert testimony by

7

a law enforcement officer that the quantity at issue indicates an intent to deliver. *See Reed*, 158 S.W.3d at 49 (holding evidence is legally sufficient in light of expert testimony that liquid codeine seized from appellant was large amount typically not for personal use); *Simmons v. State*, 100 S.W.3d 484, 491 (Tex. App.—Texarkana 2003, pet. ref'd) (holding evidence is legally sufficient due to large amount of cocaine seized and expert testimony that such a large amount was intended for sale); *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995) (noting that "intent to deliver may be inferred from the quantity of drugs possessed"), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997); *Pitts v. State*, 731 S.W.2d 687, 692 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (holding that amount of drugs found and expert testimony that amount suggested intent to deliver was sufficient evidence).

In the present case, the evidence establishing Johnson's intent to deliver not only included expert testimony that the large amount of drugs at issue indicated an intent to sell, but also additional factors, all of which are summarized below, such as the multiple types of drugs found, the lack of drug use paraphernalia, the lack of evidence that Johnson was a drug user, and Johnson's flight from the police.

### *Large Quantity*

Johnson possessed 13.12 grams of powder cocaine, 4.33 grams of crack cocaine, and 13.72 grams of liquid phencyclidine. The jury heard expert testimony from Brogden that in his experience as a law enforcement officer, the amount of cocaine in Johnson's possession was

8

consistent with an intent to deliver.[4]  Furthermore, Budge, a chemist experienced in analyzing narcotics seized by law enforcement officers, testified that the crack rocks Johnson possessed were approximately twice the size of the rocks he generally saw in delivery cases and that they could be broken down into around 20-40 standard-sized crack rocks.  Budge also testified that his lab had "very, very, very seldom" seen larger quantities of liquid phencyclidine than the amount possessed by Johnson and that liquid phencyclidine for personal use is generally carried in one or two milliliter vials, approximately half an inch tall.

### Multiple Types of Drugs Found

Furthermore, Johnson possessed phencyclidine and two different forms of cocaine at the time of his arrest.  His possession of multiple types of drugs simultaneously is another factor suggesting that the drugs were intended for delivery.  *See Jordan*, 139 S.W.3d at 726 (stating that fact that appellant possessed three types of drugs was evidence indicating intent to deliver).

### Lack of Drug Use Paraphernalia

While police did not find drug sale paraphernalia, such as scales or additional baggies, in Johnson's possession, there is also no evidence that Johnson possessed drug *use* paraphernalia, such as a pipe or lighter, and we must assume that the jury reconciled this conflicting evidence in favor of finding an intent to deliver.  *See Reed*, 158 S.W.3d at 48 (holding that the absence of *either*

---

[4]  It is not clear from Brogden's testimony whether his statement that the amount of cocaine in Johnson's possession suggested an intent to deliver was a reference specifically to the crack cocaine or to both the crack cocaine and the powder cocaine.  Viewing the evidence in the light most favorable to the verdict, the jury appears to have interpreted this statement as a reference to both the crack cocaine and the powder cocaine.

drug use paraphernalia or drug sale paraphernalia can be considered in determining intent); *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (holding that the absence of drug use paraphernalia is evidence suggesting an intent to deliver).

### Lack of Evidence that Johnson was a Drug User

Evidence showing that a defendant was a drug user can be used to support a finding that narcotics were intended for personal use, rather than intended for delivery. *Reed*, 158 S.W.3d at 49. No evidence was presented during the guilt and innocence phase of the trial to suggest that Johnson was a drug user.

### Flight

Johnson's flight and extraordinary efforts to escape arrest by speeding through a residential area, jumping from a moving vehicle, and finally, after being struck by a police car, continuing to flee on foot and attempting to climb a fence, may also be considered evidence of an intent to deliver. *See Moreno*, 195 S.W.3d at 326 (holding that facts that appellant initially failed to stop at request of police, struggled with police to evade arrest, and attempted to discard contraband suggested intent to deliver rather than personal use).

Despite the presence of the factors discussed above indicating an intent to deliver, Johnson argues that the evidence is insufficient because the drugs were not packaged separately, as if for individual sale. However, the method in which drugs are packaged is only one factor in finding intent to deliver and is not dispositive. *See Mack*, 859 S.W.2d at 528-29. In addition, Brogden

10

testified that crack cocaine is generally not packaged separately for sale, like many other types of narcotics.

Finally, the jury could have inferred that Johnson intended to share the drugs with Jackson, who had been riding in the minivan with Johnson when Brogden attempted to initiate a traffic stop. "Deliver" means to "transfer, actually or constructively, to another a controlled substance." Tex. Health & Safety Code Ann. § 481.002(8) (West 2003). "[T]he concept of 'delivery' includes sharing drugs with third persons, and is not limited to commercial ventures." *Fontenot v. State*, 792 S.W.2d 250, 256 (Tex. App.—Dallas 1990, no pet.). Therefore, the evidence is legally sufficient if the jury could have found beyond a reasonable doubt that Johnson intended to share the drugs with Jackson.

Johnson possessed a large amount of drugs that was, according to expert testimony, inconsistent with personal use. No pipes, lighters, marijuana cigarettes, or any other paraphernalia that could be used to ingest the types of drugs in question were found in Johnson's possession. Johnson possessed multiple types of drugs simultaneously and went to great lengths to avoid arrest. While Johnson points to the lack of other factors that can be used to find an intent to deliver, such as evidence that the arrest took place in an area known for drug trafficking or that a large amount of cash was found in his possession, "the number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Moreno*, 195 S.W.3d at 326. Furthermore, where the facts are as consistent with an intent to possess as with an intent to deliver, we must presume that the trier of fact resolved any such conflict in favor of the prevailing party. *Jordan*, 139 S.W.3d at 727. Viewing the evidence in the light most favorable to the verdict, we hold

11

that a rational trier of fact could have found beyond a reasonable doubt that Johnson had an intent to deliver. We overrule Johnson's first issue.

**Factual Sufficiency**

On the issue of the factual sufficiency of the evidence, Johnson primarily repeats the arguments presented on the issue of legal sufficiency, asserting that the verdict is so against the great weight and preponderance of the evidence that it should be overturned.

As discussed above, the State presented evidence that Johnson possessed an amount of drugs greater than was consistent for personal use, that no instruments used for the ingestion of narcotics were found in Johnson's possession, that Johnson possessed multiple types of drugs simultaneously, and that Johnson went to great lengths to escape arrest. Viewing this evidence in a neutral light, the evidence is not so weak that the verdict seems clearly wrong or manifestly unjust. Therefore, we must compare the evidence presented by the defendant to the evidence presented by the State in order to determine whether the verdict is against the great weight and preponderance of the evidence. *See Vasquez*, 67 S.W.3d at 236.

Johnson points to testimony from Budge that an individual drug user might possess large amounts of drugs for personal use.[5] This evidence conflicts with other testimony by Budge, as well as Brogden, that the large amount of drugs held by Johnson was inconsistent with personal

---

[5] Johnson also points to the testimony of Avery Pegues, Johnson's uncle and a recovering addict, who testified that the amount of drugs in question was consistent with personal use. However, Pegues's testimony occurred during the punishment phase and was not considered by the jury in determining guilt or innocence. Similarly, the jury did not consider Johnson's testimony during the punishment phase in which he stated that he had planned to share the drugs in question with Jackson and that he had sold drugs in the past to support his drug habit.

use. Only the jury can resolve apparent conflicts in the evidence and the jury apparently chose to resolve this conflict in favor of the prosecution. *See Robbins v. State*, 145 S.W.3d 306, 309 (Tex. App.—El Paso 2004, pet. ref'd). As a result, Budge's testimony is not sufficient evidence for this Court to determine that the verdict is contrary to the great weight and preponderance of the evidence.

Viewing the evidence in a neutral light, the evidence is not so weak that the verdict seems clearly wrong or manifestly unjust or that the verdict is contrary to the great weight and preponderance of the evidence. We overrule Johnson's second issue.

## CONCLUSION

Because we conclude that the evidence is both factually and legally sufficient to sustain the jury's verdict regarding the element of intent to deliver, we overrule both of Johnson's issues and affirm the conviction.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: November 9, 2007

Do Not Publish

13