**Affirmed as Modified; Opinion Filed February 25, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01679-CR

### ANDRE WAYNE VITTATOE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 4
### Dallas County, Texas
### Trial Court Cause No. F12-51535-K

## OPINION

Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

A jury found appellant Andre Wayne Vittatoe guilty of possession with the intent to deliver cocaine in the amount of four grams or more but less than 200 grams, as charged in the indictment, and the trial court assessed appellant's punishment at fifteen years' imprisonment. In four issues, appellant contends the trial court erred by overruling his objection to allegedly improper jury argument, the evidence is legally insufficient to support the conviction, the evidence is insufficient to support the trial court's order to pay $324 in court costs, and that the judgment should be modified to show that the trial court, not the jury, assessed punishment in this case. As modified, we affirm the trial court's judgment.

### BACKGROUND

On the morning of January 23, 2012, at approximately 10:30 a.m., Dallas police officers Reginald Luster and Josh Tannehill were driving southbound on Harry Hines Boulevard, in an

area known for high crime activity. As they drove past a Garden Inn Suites near the 2500 block of Harry Hines, they spotted a white J30 Infinity exiting the parking lot. The officers made a U-turn and pulled into the center lane (it was a three lane street) to look for traffic violations. When the Infinity pulled up behind the officers in the center lane, the "directional" lights on the squad car directed the vehicle to drive around the officers. The officers then saw the Infinity turn toward the right-hand lane without signaling, after which they conducted a traffic stop of the vehicle for changing lanes without signaling. Before stopping the vehicle, Luster noticed that its passenger, appellant, was "sort of bending forward, backwards, moving around with his hands." This "[u]ncommon, odd, and sort of alarming" behavior—seen by Luster in other traffic stops—suggested that appellant was trying to hide or conceal something.

After they stopped the vehicle, the officers got out of their squad car and approached the Infinity. Luster moved toward the passenger side; his partner, Tannehill, the driver's side. As he came up to the passenger side of the vehicle, Luster saw, in plain view, a small, blue plastic container with what looked like a green, leafy substance on the floorboard between appellant's feet. Based on his experience, Luster recognized the substance as marijuana.

Luster asked appellant to step out of the vehicle. He placed appellant under arrest and searched him, finding two additional bags of marijuana in appellant's right front pocket. Appellant was placed in the back of the squad car.

Meanwhile, Tannehill had asked the driver and owner of the vehicle, Janet Bernard, to step outside of the vehicle and sit on the curb. Tannehill testified that she was placed under arrest when the officers found she "had a felony warrant."[1] Tannehill then searched the car, finding an Altoids can that held eight individually wrapped or packaged crack cocaine rocks,

_____

[1] The record is not clear regarding precisely how many outstanding warrants there were for Bernard's arrest. Tannehill's testimony suggested there was a single felony warrant, but Luster testified that Bernard had "some probation violations."

three large crack cocaine rocks that were not packaged, and one clear glass pipe that, according to Tannehill, was "probably three to four" inches in length. All of these items were found in the Altoids can, which was in addition to the small, blue plastic container that Luster testified he saw in plain view on the floorboard between appellant's feet. Tannehill testified that he found the Altoids can on the right front passenger-side floorboard of the car, near the center console.[2] Appellant was charged with possessing with the intent to deliver the cocaine found in the Altoids can.

Tannehill identified State's exhibits 4b and 4c as the cocaine he recovered from the Altoids can and delivered to Dallas Police Department's property room. State's exhibit 4b was three large rocks of crack cocaine weighing a total of 3.74 grams, including adulterants and dilutants, with 97 percent purity. State's exhibit 4c was six small Ziplock "baggies" of crack cocaine weighing a total of 0.26 grams, including adulterants and dilutants. The combined weight of the two exhibits was 4.0 grams, including adulterants and dilutants.[3]

Luster testified that possession of one or two rocks of crack cocaine is typically an indication that the person possesses the cocaine for personal use. When a person possesses five to eight baggies, Luster testified that he normally charges the individual with manufacturing and intent to deliver. He also testified that the way drugs are packaged, in multiple bags or a few, indicates whether the person is using or selling. On cross-examination, Tannehill testified that they charged appellant with possession with intent to deliver based on the amount of cocaine seized and because it included eight individually wrapped cocaine rocks. He agreed that other than the amount of drugs and the individual packaging, there was no other evidence of appellant's intent to deliver.

---

[2] Luster did not recall seeing an Altoids can on the floorboard next to appellant's feet when he first approached the car.

[3] According to the testimony of Tana Langley, a drug chemist with the Southwestern Institute of Forensic Sciences, the contents of two other small Ziplock bags containing a "white material" were weighed (0.19 grams) but not analyzed.

The State also called Detective Barry Ragsdale, a supervisor in the narcotics division of the Dallas Police Department, as an expert witness. Ragsdale began his testimony by describing his more than twenty-two years of experience with the Dallas Police Department and the Drug Enforcement Agency, including investigating large-scale drug distribution organizations as a federal undercover task force officer, supervising a task force targeting street level drugs in Dallas, and purchasing narcotics as an undercover officer.

Ragsdale testified that the street value of the crack cocaine in State's exhibit 4b was $375. He testified that 3.74 grams was "more than what we commonly see for someone using for personal use." He added, "I mean it's going to be used, but generally that quantity is going to be broken down and be redistributed." He also testified:

> Most individuals that utilize crack or that are addicted to crack, they don't have the discipline to maintain a larger quantity. They are not going and buying $300 and making it last for the whole week.

> A crack addict will smoke fifteen minutes later when he's feeling nerves. He'll smoke again, he'll smoke again, smoke again, smoke again, until it's gone or until he expires. And that's been my experience over the last 22 years of talking to people and dealing with people in this business.

He further testified that the six Ziplock "baggies" in State's exhibit 4c were packaged in such a way as to indicate they were going to be sold or distributed to others:

> Well, again, if an individual was going to use a crack [sic], and say they did come across a hundred dollars and they wanted to buy a hundred dollar rock of crack cocaine, they would get a rock that might be a little bit larger, something like this, and they would use a razor blade or a knife and chip off of that and smoke.

> Fifteen, twenty minutes later, they are going to chip off again and smoke. They wouldn't go through the process, which is a very tedious process, of placing it in the small what they refer to as jewelry bags in the shops that sell them, which are pretty much cocaine bags or drug bags.

He testified that the "normal dosage unit" of cocaine was "one-tenth of a gram," considered to be "a ten dollar rock or ten dollars['] worth of cocaine." The baggies in exhibit 4c, however, were a "little lighter than you'll see" on the street—they were "probably nickel rocks" for users who

–4–

were struggling to afford a larger purchase. A nickel rock was enough to get an individual high. Asked to describe who he would expect to be in possession of the cocaine found in this case, Ragsdale testified:

> Well, some individuals that utilize cocaine and crack cocaine, at some point they start struggling to feed their habit, so they may start selling to—it starts out selling to friends or hooking guys up here and there. But it starts out supporting their habit. Before long they are selling drugs. They become a drug dealer.
>
> And, so, there are times that we see that, and that's what this would appear to be to me. And this is going to be somebody that's selling. Whether they are using or not, I don't know.

He also testified that if the amount of drugs seized in this case were found inside a container with a pipe, those facts would suggest to him that the person was both selling and using—a circumstance Ragsdale had often seen in his career.

Appellant testified that at the time of his arrest he and Bernard were living together at the Garden Suites Inn, and that they were on their way to a nearby laundromat when they were stopped by the police. As they were being pulled over, Bernard said, "I'm putting this down here," though at the time appellant did not know what she was referring to. At the same time, appellant reached down to grab an open Smirnoff Ice Triple Black bottle so that it would not spill, and then returned the bottle to the floorboard. The blue plastic container was on the floorboard at appellant's feet because he was going to "get some papers" at a convenience store next to the laundromat, and "then roll a marijuana cigarette while we were drying clothes." Appellant said he was not moving around in the car in an attempt to conceal or hide anything; he simply moves around a lot because he has "high energy" and is hyperactive.

Appellant told the jury that Bernard was addicted to crack cocaine and would spend "roughly" $400 or $500 per day on crack. She also used Xanax and marijuana. He testified that he had "no money" and did not have to "pay for anything" because Bernard had $209,000 in the bank from an insurance settlement due to a death in her family. Appellant estimated she was

withdrawing $1000 every day to support her drug habit. Appellant testified that the cocaine in the Altoids can was for Bernard's personal use and consumption, and was not for sale. Appellant admitted to owning the marijuana found in his pocket and on the floorboard—he said Bernard "bought me the weed that I smoked"—but denied owning the cocaine or even knowing the Altoids can was in the car.

**DISCUSSION**

**1. Jury Argument**

In his first issue, appellant argues the trial court erred by overruling his objection to the State's allegedly improper jury argument that "injected and emphasized harmful facts that were not a part of the evidence in this case."

During the State's closing jury argument, the prosecutor commented that appellant "stole three cars in [19]88." Defense counsel objected, stating, "I'll object, your Honor. I don't think that's in evidence." The trial court responded, "Jury argument." The prosecutor continued, "He actually stole four cars in '88. He stole a car in '89." No further objection was made. The trial court then interrupted the prosecutor: "Ladies and gentlemen you'll be bound by your own recollection of the evidence, so that's up to you what you heard. All right. Please proceed."

An objection to jury argument must be pressed to the point of procuring a ruling or the alleged error is waived on appeal. *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *DeRusse v. State*, 579 S.W.2d 224, 235 (Tex. Crim. App. 1979). The court of criminal appeals has explained:

> We have previously said that while the "traditional and preferred procedure" for a party to preserve error is to (1) object in a timely manner, (2) request an instruction to disregard, and (3) move for a mistrial if the instruction to disregard seems insufficient, such a sequence is not essential to preserve complaints for appellate review. The only essential requirement to ensure preservation is a timely, specific request that is refused by the trial court.

*Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (internal citations omitted).

This Court has previously concluded that similar responses by trial courts to objections during jury arguments were not rulings, and that no error was preserved for appellate review. *See Heaton v. State*, No. 05–12–00001–CR, 2013 WL 3353330, at *3 (Tex. App.—Dallas June 28, 2013, pet. ref'd) (not designated for publication) ("Please contain your remarks to the record."); *Skief v. State*, No. 05–12–00223–CR, 2013 WL 2244336, at *11 (Tex. App.—Dallas May 21, 2013, no pet.) (not designed for publication) ("The jury will recall the evidence as they heard it. Proceed."); *Rice v. State*, Nos. 05–08–00605 & 00606-CR, 2011 WL 4140921, at *3 (Tex. App.—Dallas Sept. 16, 2011, no pet.) (not designed for publication) ("The Jury will remember what the evidence was."). Thus, the trial court's response to appellant's objection was not a ruling on the objection, and it did not preserve error. Because appellant did not request further relief that was refused by the trial court, he failed to preserve his issue for appellate review. *See* TEX. R. APP. P. 33.1(a). We overrule appellant's first issue.

## 2. Sufficiency of the Evidence

In his second issue, appellant contends the evidence was insufficient to support the conviction for possession with the intent to deliver a controlled substance because the State failed to prove he intended to deliver the cocaine that was found in the vehicle stopped by Dallas police officers. He asks us to reform his conviction to possession of cocaine and remand the case for a new punishment hearing.

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Lucio v. State*, 351 S.W.3d 878, 894–95 (Tex. Crim. App. 2011). We are required to defer to the fact finder's credibility and weight determinations because the fact finder

is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

Appellant was indicted for unlawfully and knowingly possessing with the intent to deliver cocaine in an amount by aggregate weight, including any adulterants or dilutants, of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). "In a possession with intent to deliver case, the State must prove that the defendant: (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance." *Parker v. State*, 192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a).

Intent to deliver may be established through circumstantial evidence. *See Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.). Furthermore, "intent to deliver is a question of fact for the jury to resolve, and it may be inferred from the acts, words, or conduct of the accused." *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). Testimony by experienced law enforcement officers may be used to establish a defendant's intent to deliver. *Robinson v. State*, 174 S.W.3d 320, 331 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). We may consider several factors in determining such intent, including the nature of the location where the defendant was arrested, the quantity of drugs the defendant possessed, the manner of packaging the drugs, the presence or absence of drug paraphernalia (for use or sale), whether the defendant possessed a large amount of cash in addition to the drugs, and the defendant's status as a drug user. *Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007); *Jordan*, 139 S.W.3d at 726. "The number of factors present is not as important as the logical force the factors have in

establishing the elements of the offense." *Moreno v. State*, 195 S.W.3d 321, 326 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (op. on reh'g).

The jury was also charged on the law of parties. "A person is criminally responsible as a party to the offense if it is committed by the actor's own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Because the charge authorized the jury to convict on alternative theories—as a principal or a party—the verdict will be upheld if the evidence was sufficient on either of those theories. *See Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005). The court also charged the jury on the lesser-included offense of possession of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115.

In analyzing appellant's intent, we must presume the trier of fact resolved any conflicting inferences in favor of the prosecution. The State presented evidence that one or two rocks of crack cocaine could be regarded as intended for personal use, but that the amount of crack cocaine seized here (a total of 4.0 grams, including adulterants and dilutants), its street value ($375), and the way it was packaged (in individually wrapped packages) indicated it was intended for sale or distribution to others. Appellant points out that the total amount of cocaine recovered was 4.19 grams, just above the minimum weight for the offense; that it was found in a small, transportable container; that there were no extra, empty baggies to indicate the cocaine was intended for sale or delivery; that no drug paraphernalia was recovered from the car apart from the pipe; that appellant had no money on his person when he was arrested; that he had only one prior drug conviction for possession of cocaine in 1991; and that there was no evidence the

–9–

officers had any familiarity with appellant or Bernard or knew anything about their personal drug habits.

Appellant suggests, based on these factors, that it was not unreasonable to believe the cocaine was individually packaged because it was intended for personal use. But even if we assume appellant's possession of the cocaine was as consistent with personal use as it was with delivery, we must presume the trier of fact resolved the conflict in favor of the prosecution. Furthermore, courts have long held that even a small quantity of cocaine packaged in individual units is evidence supporting the intent to deliver. *See, e.g., Taylor*, 106 S.W.3d at 831 (evidence sufficient for possession with intent to deliver where police recovered 1.3 grams of crack cocaine, an amount consistent with approximately thirteen individual uses, and an officer testified that "because of the cost and nature of the narcotic, it would be 'very uncommon' for someone to purchase thirteen individual uses of crack cocaine and not have intent to sell at least a portion of those uses"); *Reece v. State*, 878 S.W.2d 320, 325–26 (Tex. App.—Houston [1st Dist.] 1994, no pet.) (1.4 grams in twelve packets); *Dearmon v. State*, No. 14–04–01045–CR, 2006 WL 1148138, at *3 (Tex. App.—Houston [14th Dist.] Mar. 20, 2006, pet. ref'd) (mem. op., not designated for publication) (2.52 grams in fourteen packages); *see also Rhodes v. State*, 913 S.W.2d 242, 250–51 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997) (2.09 grams). Based on the evidence presented, the trier of fact could have reasonably determined that appellant's possession of the cocaine was inconsistent with personal use. Viewing the evidence in the light most favorable to the verdict, we therefore conclude a rational trier of fact could have found beyond a reasonable doubt that appellant possessed the controlled substance with the intent to deliver. Thus, the evidence is sufficient to support the conviction. *See Jackson*, 443 U.S. at 326. We overrule appellant's second issue.

–10–

### 3. Court Costs

In his third issue, appellant argues there is insufficient evidence in the record to support the trial court's order for appellant to pay $324 in court costs.

The Texas Code of Criminal Procedure provides in part that if a criminal action is appealed, "an officer of the court shall certify and sign a bill of costs stating the costs that have accrued and send the bill of costs to the court to which the action or proceeding is transferred or appealed." TEX. CODE CRIM. PROC. ANN. art. 103.006. The code of criminal procedure further provides that "[a] cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost." *Id.* art. 103.001.

The clerk's record in this case did not contain a copy of the cost bill or any other document with an itemized list of the costs assessed in this case. Given that appellant raised an issue concerning the costs assessed against him, we ordered the Dallas County District Clerk to prepare and file a supplemental clerk's record containing a detailed itemization of the costs assessed in this case, including specific court costs, fees, and court-appointed attorney's fees, and that the supplemental record should include a document explaining any and all abbreviations used to designate a particular fee, cost, or court-appointed attorney's fee. *See* TEX. R. APP. P. 34.5(c)(1) (rules of appellate procedure allow supplementation of clerk's record if relevant item has been omitted).

The District Clerk has complied with our order by filing a signed and certified supplemental clerk's record containing an itemization of the costs assessed in this case, and an explanation of the abbreviations used in the itemization. Because the record now contains a cost bill that supports the costs assessed in the judgment, appellant's argument that the evidence is insufficient to support the imposition of costs because the clerk's record does not contain a cost

bill is, therefore, moot. *See Coronel v. State*, 416 S.W.3d 550, 555 (Tex. App.—Dallas 2013, pet. ref'd) (citing *Franklin v. State*, 402 S.W.3d 894, 894 (Tex. App.—Dallas 2013, no pet.)); *see also Juarez v. State*, No. 05–12–00125–CR, 2013 WL 3957008, at *9 (Tex. App.—Dallas July 31, 2013, no pet.) (not designated for publication).

In response to the supplemental clerk's record, appellant has filed objections in which he argues the cost bill filed in the supplemental record is not a proper bill of costs. He contends the cost bill is not a proper bill of costs because it is an "unsigned, unsworn computer printout" that "was not signed by the officer who charged the cost nor by the officer who is entitled to receive payment for the cost." As we stated earlier, the code of criminal procedure requires that a bill of cost be certified and signed "by the officer who charged the cost or the officer who is entitled to receive payment for the cost," "stating the costs that have accrued" if the cause is appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001, .006.

In this case, the District Clerk has provided a cost bill that itemizes the costs that have accrued thus far in appellant's case, and it is certified and signed by the District Clerk. This satisfies the mandate of the code of criminal procedure. *See Coronel*, 416 S.W.3d at 555 (rejecting argument that bill of costs in supplemental clerk's record was not a "proper bill of costs" because it was an "unsigned, unsworn computer printout"); *see also Juarez*, 2013 WL 3957008, at *10. Appellant also contends there is no indication the bill of costs was filed in the trial court or brought to the court's attention before the costs were entered in the judgment. We rejected this argument in *Coronel*, where we stated that "nothing in the code of criminal procedure or the statutes addressing the assessment of costs against defendants requires that a bill of costs be presented to the trial court at any time before judgment." *Coronel*, 416 S.W.3d at 555– 56; *see also Juarez*, 2013 WL 3957008. We therefore deny appellant's issue and overrule

his objections.[4]

## 4.  Modification of Judgment

In his fourth issue, appellant asks us to correct the trial court's judgment to accurately reflect that the trial court, not the jury, assessed punishment in this case.  The State agrees, but it asks us to correct the judgment to also show that appellant pleaded true to the first enhancement paragraph and the trial court found the enhancement paragraph to be true.

The judgment in this case states that the jury assessed appellant's punishment.  However, it was the trial court, not the jury, that assessed appellant's punishment; the jury determined his guilt.  Additionally, the judgment states "N/A" in the space allotted for "Plea to 1st Enhancement Paragraph" and "Findings on 1st Enhancement Paragraph."  The record, however, shows that appellant entered a plea of "true" to the enhancement paragraph and the trial court received the plea of true.  The trial court's docket sheet notes for that day state that appellant pleaded true to the first enhancement paragraph, the second enhancement paragraph was dropped, and the court found the enhancement paragraph to be true.

We may modify a trial court's written judgment to correct a clerical error when we have the necessary information to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd).  We recognize that a docket sheet entry alone is insufficient to constitute a judgment or decree of the court.  *Bailey-Mason v. Mason*, 122 S.W.3d 894, 897 (Tex. App.—Dallas 2004, pet. denied).  Although the trial court's docket sheet entry cannot substitute for a written order, read together with the court's receipt of appellant's plea of true, it shows that appellant pleaded true to the first enhancement paragraph and that the trial court found the

---

[4] In his original brief and his objections, appellant does not challenge the propriety or legality of the specific costs assessed; therefore, we do not address those matters.

enhancement paragraph to be true. *See Stokes v. State,* 277 S.W.3d 20, 24 (Tex. Crim. App. 2009) (finding trial court's docket sheet to be reliable indicator of trial court's decisions and business of the court). Accordingly, we will modify the judgment to reflect that (1) the trial court assessed appellant's punishment and (2) appellant pleaded true to the enhancement paragraph, which the trial court found to be true. *See Asberry*, 813 S.W.2d at 529–30.

As modified, we firm the trial court's judgment.


/ Lana Myers/
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
121679F.U05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDRE WAYNE VITTATOE, Appellant

No. 05-12-01679-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F12-51535-K.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Punishment Assessed by: JURY" should be changed to "Punishment Assessed by: COURT"

"Plea to 1st Enhancement Paragraph: N/A" and "Findings on 1st Enhancement Paragraph: N/A" should be changed to "Plea to 1st Enhancement Paragraph: True" and "Findings on 1st Enhancement Paragraph: True."

As **REFORMED**, the judgment is **AFFIRMED**. We direct the trial court to enter a new judgment that reflects these modifications.

Judgment entered this 25th day of February, 2014.

/Lana Myers/
LANA MYERS
JUSTICE

–15–