COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-389-CR

 

RANDY SKYLER STEVENS                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 30TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

Appellant
Randy Skyler Stevens appeals from his conviction for possession of a controlled
substance with intent to deliver.  In two
issues, Stevens argues that (1) the trial court erred by denying his motion to
suppress evidence and (2) the evidence is factually insufficient to support his
conviction.  We affirm.








II. 
Factual and Procedural Background

A.  The Traffic Stop

On
February 22, 2006, around 5:30 p.m., Officers Dwayne Powell and Brad Sanchez of
the Wichita Falls Police Department were driving northbound on Harrison Street
when they noticed that a Cadillac driving southbound had very dark tint on its
passenger side window.  Officer Sanchez,
believing the tint to be illegal, turned the patrol unit around and activated
the unit=s lights
to make a stop.  The Cadillac continued
on for a short distance, making a couple of turns before stopping in an
alleyway.  As the Cadillac came to a
stop, the driver, later identified as Stevens, immediately flung the door open
and exited the vehicle.  Officers Powell
and Sanchez approached Stevens and informed him that he had been stopped due to
the window tint on the vehicle. 








After a
brief discussion, Officer Powell asked Stevens to step to the back of the
Cadillac so that he could perform a pat-down. 
As Officer Powell stepped away to give Stevens room to move to the back
of the vehicle, Stevens took off running. 
Officer Powell managed to grab Stevens by his coat, but Stevens twisted
out of the coat and continued to run away. 
Officer Powell then dropped the coat and, along with Officer Sanchez,
took off after Stevens. Officer Sanchez followed Stevens=s direct
path through nearby backyards while Officer Powell ran down the alley.  About two minutes after the pursuit began,
Stevens turned himself in.  At that time,
Officer Powell placed Stevens under arrest for evading an officer, performed a
pat-down on Stevens, and placed him into the back of the patrol unit.  Officer Powell then recovered Stevens=s coat
from the ground and searched the pockets. 
During the search, he discovered a .25 semiautomatic pistol loaded with
a magazine containing six rounds, two clear bags containing a white powdery
substance, and one large plastic bag containing several small one-inch Ziploc
bags.

The
State charged Stevens with possession of a controlled substance with intent to
deliver.  Stevens filed a motion to
suppress evidence, claiming that the seized evidence was the result of a
warrantless search in violation of his constitutional rights.

B.  Hearing on the Motion to Suppress








On
September 19, 2008, the trial court held a hearing on Stevens=s motion
to suppress.  During the hearing, in
addition to the facts stated above, Officer Powell testified that he had been
an officer for nineteen years and that, on the night in question, he had been
assigned to work overtime in the gang suppression unit.[2]  He testified that when he saw the Cadillac,
he thought that the tint on the passenger side window was illegal and that to
his knowledge the only way to test window tint was to stop the vehicle and use a
tint meter.  In response to questioning
about the visibility on that night, Officer Powell stated that it was Aclear
skies.@  When asked whether he had reasonable
suspicion based on his experience and training to stop the vehicle for illegal
window tint, Officer Powell responded, AYes, ma=am.@[3]

Officer
Powell also testified that he had not known who was driving the Cadillac until
after the vehicle had stopped.  He stated
that when Stevens exited the vehicle, he recognized him by sight based on prior
encounters. Officer Powell testified that, on one of those occasions, Stevens
had informed him that he was a member of a gang.  When questioned about the attempted pat-down,
Officer Powell stated that he had been concerned for officer safety due to: (1)
the traffic stop taking place in a gang affiliated territory, (2) his
experience with gangs and his personal knowledge of Stevens=s gang
affiliation, (3) Stevens=s actions prior to the stopCthat is,
continuing to drive and turning into an alleyway, (4) Stevens=s
clothingCthat is,
a big baggy coat, and (5) the time of day. 
On cross-examination, Officer Powell testified that all but one of his
prior encounters with Stevens did not warrant a pat-down and that he did not
find any weapons the time he patted Stevens down.








In
addition to offering testimony consistent with Officer Powell=s,
Officer Sanchez testified that he had been with the police department for
fifteen years. He testified that it is a Wichita Falls Police Department policy
to inventory the clothing of a person arrested, or the evidence obtained, prior
to placing the clothing or evidence into the patrol unit.  When asked whether the tint on the window had
been tested, Officer Sanchez responded that he had attempted to test the window
tint but had been unable to roll the window down.[4]  Finally, Officer Sanchez testified that
Stevens had been driving under a suspended driver=s
license.

At the
close of evidence, the trial court denied Stevens=s motion
to suppress.  No findings of fact or
conclusions of law were requested or filed.

C.  Trial on the Merits

During
the trial on the merits, Officers Powell and Sanchez provided similar testimony
as that provided during the suppression hearing.  In addition, Kerry O=Bric, a
forensic scientist for the DPS Crime Laboratory in Waco, testified that the two
bags found in Stevens=s coat contained a total of 5.85
grams of cocaine.








Officer
Kevin Folmar with the Wichita Falls Police Department testified that he had
been with the department for twelve-and-a-half years.  During his time at the department, he had
spent almost three years on patrol, seven years in narcotics, and he was
currently assigned to the training unit. 
Officer Folmar testified in detail about his experience and training in
narcotics.  He testified that handguns
are typically carried by drug dealers, not drug users.  When asked about the one-inch bags that were
discovered in Stevens=s coat, Officer Folmar
responded, Ausually when someone is in
possession of this type ofCof
packaging, it would indicate that they could be in the business of selling
narcotics, packaging it for resale.@  Officer Folmar also testified that 5.85 grams
is more than a drug user typically buys at one time, and that a single usage
would be anywhere from .1 to .2 grams. 
On cross-examination, Officer Folmar=s
response to the question of whether scales are an important factor in
determining whether someone is dealing drugs was, 

It could be.  I mean, if you had
a large amount of drugs and scales, then yes, that would indicate to me that
they were probably selling it.  Like in
this case, he had a large amount of drugs and baggies. That to me indicates he
was selling withCyou know, without the
presence of scales. 

 








Officer Folmar was also asked,
as an expert in the area of narcotics, what it would be indicative of if
someone had in his possession: (1) a semiautomatic gun containing a magazine
with six bullets, (2) numerous one-inch Ziploc baggies, (3) very little or no
money, and (4) two eight-ball packages of cocaine packaged separately.  In response, Officer Folmar stated,

It would indicate to me that theCdue to
the presence of the baggies, the presence of the gun, the presence of the
amount of cocaine that we=re talking about, in my opinion
I would say that he was possessing that with the intent to distribute.  And just because thereCthere is
not a presence of money, could be maybe he just made the purchase and he used
up all the money that he had to make the purchase.

At the
close of trial, the jury found Stevens guilty of the offense of possession of a
controlled substance with intent to deliver. 
After a hearing, the jury assessed punishment at thirty-five years=
confinement and a fine of $5,000; the trial court sentenced Stevens
accordingly.  This appeal followed.

III. 
Motion to Suppress

In his
first issue, Stevens asserts that the trial court erred by denying his motion
to suppress.

A.  Standard of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24B25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000), modified on other grounds by State v. Cullen, 195 S.W.3d 696
(Tex. Crim. App. 2006).  Therefore, we
give almost total deference to the trial court=s
rulings on (1) questions of historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex.
Crim. App. 2006); Johnson v. State, 68 S.W.3d 644, 652B53 (Tex.
Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court=s
rulings on those questions de novo.  Amador,
221 S.W.3d at 673; Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim.
App. 2005); Johnson, 68 S.W.3d at 652B53.








Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  State
v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); see
Wiede, 214 S.W.3d at 25.  We then
review the trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Kelly, 204 S.W.3d
at 819.

We must
uphold the trial court=s ruling if it is supported by
the record and correct under any theory of law applicable to the case even if
the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740  (Tex. Crim. App. 2007); Armendariz
v. State, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), cert. denied,
541 U.S. 974 (2004).

B.  Applicable Law








The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend.
IV; Wiede, 214 S.W.3d at 24.  To
suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672.  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable. Id.
at 672B73; Torres
v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State,
158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

An
officer has probable cause to stop and arrest a driver if he observes the
driver commit a traffic offense.  State
v. Gray, 158 S.W.3d 465, 469B70 (Tex.
Crim. App. 2005); see State v. Ballman, 157 S.W.3d 65, 70 (Tex. App.CFort
Worth 2004, pet. ref=d).  A detention, as opposed to an arrest, may be
justified on less than probable cause if a person is reasonably suspected of
criminal activity based on specific, articulable facts.  Terry v. Ohio, 392 U.S. 1, 21, 88 S.
Ct. 1868, 1880 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex.
Crim. App. 2000).  An officer conducts a
lawful temporary detention when he or she has reasonable suspicion to believe
that an individual is violating the law. 
Ford, 158 S.W.3d at 492. 
Reasonable suspicion exists when, based on the totality of the
circumstances, the officer has specific, articulable facts that when combined
with rational inferences from those facts, would lead him to reasonably
conclude that a particular person is, has been, or soon will be engaged in
criminal activity.  Id.  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists. 
Id.








C.  Analysis

Randy
argues that the trial court erred by denying his motion to suppress evidence
because Officer Powell and Officer Sanchez lacked probable cause to stop his
vehicle.  Stevens=s
argument and legal authority, however, discuss reasonable suspicion, not
probable cause.  In response, the State
argues that to the extent Stevens asserts a Aprobable
cause@
argument it should be overruled because the correct standard is reasonable
suspicion, and that to the extent Stevens asserts a Areasonable
suspicion@ argument it too should be
overruled on the basis that (1) he failed to preserve his complaint for review
or (2) there was reasonable suspicion to justify the stop.








At the
suppression hearing, both Officer Powell and Officer Sanchez testified that
they had initiated the traffic stop based on their belief that the window tint
on Stevens=s vehicle was in violation of
the transportation code. Thus, the State=s burden
was to demonstrate that reasonable suspicion, not probable cause, existed to
justify the stop.  See Ford, 158
S.W.3d at 492.  In construing Stevens=s
argument as one addressing reasonable suspicion, the State argues that Stevens
has failed to preserve this complaint for review. However, assuming without
deciding that Stevens has preserved this argument, we hold that Officer Powell
and Officer Sanchez testified to specific, articulable facts that would lead
them to reasonably conclude that Stevens was committing a traffic violation.

The
transportation code provides that a person commits an offense that is a
misdemeanor if Aa person . . . places on or
attaches to the windshield or side or rear window of a motor vehicle a
transparent material that alters the color or reduces the light transmission.@  Tex. Transp. Code Ann ' 547.613(a)(2)
(Vernon Supp. 2009).

Stevens
argues that the purpose of the window tint law Adeals
with being able to see into a vehicle from the outside.@  He claims that Officer Powell=s
testimony that Stevens=s vehicle had been traveling in
the opposite direction, resulting in Officer Powell=s
observing the illegal tint on the passenger side window through the front and
driver=s side
windows, is insufficient to justify reasonable suspicion.  That is, Officer Powell never testified that
he had observed the passenger window from the outside prior to the stop.  Nor did the State provide any evidence that
the requisite acceptable percentages for light transmission is the same for
both inside and outside a vehicle. 
Stevens, however, cites to no authority in support of his arguments, nor
are we aware of any.








As
previously mentioned, both Officer Powell and Officer Sanchez testified during
the suppression hearing that they had stopped Stevens for what they believed
was illegal tint on the passenger side window of his vehicle. Officer Sanchez
specifically testified that he had noticed a Asilver
Cadillac with extremely dark tint on the front passenger widow.@  Both Officer Powell and Officer Sanchez
testified that it had been Aclear@ and Asunny@ when
they noticed the tint.  When asked
whether they had the ability to test the tint of a vehicle without stopping the
vehicle, both officers responded that, other than personal experience, the only
way to test the window tint on a vehicle is to stop it and use a tint
meter.  When questioned about their
experience, Officer Powell testified that he had written Anumerous
tickets@ for
illegal window tint, and Officer Sanchez stated that he had written tickets for
illegal window tint on Amany occasions.@  Based on these specific, articulable facts,
we hold that Officer Powell and Officer Sanchez had reasonable suspicion to
believe that Stevens was committing a traffic violation.  See Tex. Dep=t of
Pub. Safety v. Fisher, 56 S.W.3d 159, 163 (Tex. App.CDallas
2001, no pet.); see also Tex. Dep't of Pub. Safety v. Chang, 994 S.W.2d
875, 877 (Tex. App.CAustin 1999, no pet.)  (stating if an officer has a reasonable basis
for suspecting a person has committed a traffic offense, the officer may
legally initiate a stop).  Therefore, the
trial court did not err by denying Stevens=s motion
to suppress.  Accordingly, we overrule
Stevens=s first
issue.








IV. 
Factual Sufficiency

In his
second issue, Stevens challenges the factual sufficiency of the evidence to
support his conviction.  Specifically,
Stevens argues that the evidence is factually insufficient Ato prove
beyond a reasonable doubt [that he] possessed cocaine with the intent to
deliver.@ 

A.  Standard of Review

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State,
204 S.W.3d 404, 414 (Tex. Crim. App. 2006). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the factfinder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
factfinder=s determination is manifestly
unjust.  Steadman, 280 S.W.3d at
246; Watson, 204 S.W.3d at 414B15,
417.  To reverse under the second ground,
we must determine, with some objective basis in the record, that the great
weight and preponderance of all the evidence, although legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








Unless
we conclude that it is necessary to correct manifest injustice, we must give
due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always factually sufficient when
it preponderates in favor of the conviction. 
Steadman, 280 S.W.3d at 247; see Watson, 204 S.W.3d at
417.

B.  Applicable Law

To
establish an intent to deliver, the State must prove that the accused intended
to transfer, actually or constructively, a controlled substance to
another.  Tex. Health & Safety Code
Ann. '
481.002(8) (Vernon Supp. 2009), '
481.112(a) (Vernon Supp. 2009).  Intent
to deliver may be proved by circumstantial evidence.  Jordan v. State, 139 S.W.3d 723, 726
(Tex. App.CFort Worth 2004, no pet.)
(citing Rhodes v. State, 913 S.W.2d 242, 251 (Tex. App.CFort
Worth 1995), aff=d, 945
S.W.2d 115 (Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997)).  Additionally, intent to deliver may be
inferred from the quantity of drugs possessed and from the manner in which they
were packaged.  Rhodes, 913 S.W.2d
at 251.  Expert testimony may be
introduced to prove intent to deliver.  Jordan, 139 S.W.3d at 726.








Courts
use several factors when determining intent to deliver, including the
following:  (1) the nature of the
location where the defendant was arrested; (2) the quantity of drugs the
defendant possessed; (3) the manner of packaging the drugs; (4) the presence or
absence of drug paraphernalia for either use or sale; (5) the defendant=s
possession of large amounts of cash; and (6) the defendant=s status
as a drug user.  Id.; see also
Brown v. State, No. 02‑04‑00564‑CR, 2006 WL 412466, at *3
(Tex. App.CFort Worth Feb. 23, 2006, no
pet.) (mem. op., not designated for publication) (applying AJordan factors@ in
legal and factual sufficiency analysis).

C.  Analysis








Stevens
argues that the evidence is factually insufficient to support his conviction
for possession with intent to deliver because the evidence as applied to the Jordan
factors is either too weak or nonexistent. 
Specifically, Stevens argues that: 
(1) while he was arrested in what the officers called a Agang
affiliated area,@ the officers did not testify
that it was also an area for high drug activity, (2) 5.85 grams of cocaine does
not necessarily prove an intent to deliver, (3) the cocaine was not broken down
into individual units for resale, (4) although there were multiple small
baggies found in Stevens=s coat, there was no evidence of
other drug paraphernaliaCsuch as scales, (5) there was no
cash found on his person or in the vehicle, and (6) there is no evidence as to
whether he is or is not a drug user.

As
recounted above, the State adduced the following evidence relevant to the issue
of intent:  Officer Powell discovered
5.85 grams of cocaine in Stevens=s coat
pocket; the expert testified that 5.85 grams is more than a drug user would
typically buy at one time; the weight of a single usage is .1 or .2 grams,
meaning 5.85 grams was sufficient to provide a single usage for up to 58
individual drug users; multiple one-inch Ziploc baggies, commonly used to
resell narcotics, were found in Stevens=s coat
pocket; a loaded .25 semiautomatic pistol was found in Stevens=s coat;
it is common for drug dealers, but not drug users, to carry handguns; and the
expert testified that the lack of money on Stevens=s person
might have been the result of Stevens having just purchased the cocaine.








As the
trier of fact, the jury was the sole judge of the weight of the evidence.  Johnson, 23 S.W.3d at 9.  While the evidence or lack of evidence cited
by Stevens may be relevant to the factors listed in Jordan, it does not,
when considered in a neutral light alongside all of the other evidence, so tip
the scales in Stevens=s favor as to render the
evidence of intent to deliver factually insufficient.  See Gilbert v. State, 874 S.W.2d 290,
298 (Tex. App.CHouston [1st Dist.] 1994, pet.
ref=d)
(stating that the number of Jordan factors that are present is not as
important as the Alogical force@ the
factors have in establishing the elements of the offense).  That is, the evidence supporting the intent
for delivery is not so weak that the jury=s
determination was clearly wrong or manifestly unjust.  Therefore, we hold that the evidence, when
viewed in a neutral light, is factually sufficient to support Stevens=s
conviction. Accordingly, we overrule Stevens=s second
issue.

V. 
Conclusion

Having
overruled both of Stevens=s issues, we affirm the trial
court=s
judgment.

 

PER
CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]During regular work
hours, Officer Powell worked in the motorcycle traffic unit.





[3]Officer Powell testified
that he had written numerous tickets for illegal window tint and that he did
not remember ever stopping a vehicle for illegal tint when, in fact, it was not
illegal.





[4]Testing requires the
window to be rolled down a little bit. 
The tint meter Aslides down over the top
of the glass and shoots the laser through it to determine the amount of light
transmission through it.@