

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-389-CR

RANDY SKYLER STEVENS                                          APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

------------

FROM THE 30TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Randy Skyler Stevens appeals from his conviction for possession of a controlled substance with intent to deliver. In two issues, Stevens argues that (1) the trial court erred by denying his motion to suppress evidence and (2) the evidence is factually insufficient to support his conviction. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

### A. The Traffic Stop

On February 22, 2006, around 5:30 p.m., Officers Dwayne Powell and Brad Sanchez of the Wichita Falls Police Department were driving northbound on Harrison Street when they noticed that a Cadillac driving southbound had very dark tint on its passenger side window. Officer Sanchez, believing the tint to be illegal, turned the patrol unit around and activated the unit's lights to make a stop. The Cadillac continued on for a short distance, making a couple of turns before stopping in an alleyway. As the Cadillac came to a stop, the driver, later identified as Stevens, immediately flung the door open and exited the vehicle. Officers Powell and Sanchez approached Stevens and informed him that he had been stopped due to the window tint on the vehicle.

After a brief discussion, Officer Powell asked Stevens to step to the back of the Cadillac so that he could perform a pat-down. As Officer Powell stepped away to give Stevens room to move to the back of the vehicle, Stevens took off running. Officer Powell managed to grab Stevens by his coat, but Stevens twisted out of the coat and continued to run away. Officer Powell then dropped the coat and, along with Officer Sanchez, took off after Stevens. Officer Sanchez followed Stevens's direct path through nearby backyards while Officer Powell ran down the alley. About two minutes after the pursuit began,

2

Stevens turned himself in. At that time, Officer Powell placed Stevens under arrest for evading an officer, performed a pat-down on Stevens, and placed him into the back of the patrol unit. Officer Powell then recovered Stevens's coat from the ground and searched the pockets. During the search, he discovered a .25 semiautomatic pistol loaded with a magazine containing six rounds, two clear bags containing a white powdery substance, and one large plastic bag containing several small one-inch Ziploc bags.

The State charged Stevens with possession of a controlled substance with intent to deliver. Stevens filed a motion to suppress evidence, claiming that the seized evidence was the result of a warrantless search in violation of his constitutional rights.

## B. Hearing on the Motion to Suppress

On September 19, 2008, the trial court held a hearing on Stevens's motion to suppress. During the hearing, in addition to the facts stated above, Officer Powell testified that he had been an officer for nineteen years and that, on the night in question, he had been assigned to work overtime in the gang suppression unit.[2] He testified that when he saw the Cadillac, he thought that the tint on the passenger side window was illegal and that to his knowledge the

---

[2] During regular work hours, Officer Powell worked in the motorcycle traffic unit.

3

only way to test window tint was to stop the vehicle and use a tint meter. In response to questioning about the visibility on that night, Officer Powell stated that it was "clear skies." When asked whether he had reasonable suspicion based on his experience and training to stop the vehicle for illegal window tint, Officer Powell responded, "Yes, ma'am."[3]

Officer Powell also testified that he had not known who was driving the Cadillac until after the vehicle had stopped. He stated that when Stevens exited the vehicle, he recognized him by sight based on prior encounters. Officer Powell testified that, on one of those occasions, Stevens had informed him that he was a member of a gang. When questioned about the attempted pat-down, Officer Powell stated that he had been concerned for officer safety due to: (1) the traffic stop taking place in a gang affiliated territory, (2) his experience with gangs and his personal knowledge of Stevens's gang affiliation, (3) Stevens's actions prior to the stop—that is, continuing to drive and turning into an alleyway, (4) Stevens's clothing—that is, a big baggy coat, and (5) the time of day. On cross-examination, Officer Powell testified that all but one of his prior encounters with Stevens did not warrant a pat-down and that he did not find any weapons the time he patted Stevens down.

---

[3] Officer Powell testified that he had written numerous tickets for illegal window tint and that he did not remember ever stopping a vehicle for illegal tint when, in fact, it was not illegal.

In addition to offering testimony consistent with Officer Powell's, Officer Sanchez testified that he had been with the police department for fifteen years. He testified that it is a Wichita Falls Police Department policy to inventory the clothing of a person arrested, or the evidence obtained, prior to placing the clothing or evidence into the patrol unit. When asked whether the tint on the window had been tested, Officer Sanchez responded that he had attempted to test the window tint but had been unable to roll the window down.[4] Finally, Officer Sanchez testified that Stevens had been driving under a suspended driver's license.

At the close of evidence, the trial court denied Stevens's motion to suppress. No findings of fact or conclusions of law were requested or filed.

## C. Trial on the Merits

During the trial on the merits, Officers Powell and Sanchez provided similar testimony as that provided during the suppression hearing. In addition, Kerry O'Bric, a forensic scientist for the DPS Crime Laboratory in Waco, testified that the two bags found in Stevens's coat contained a total of 5.85 grams of cocaine.

---

[4] Testing requires the window to be rolled down a little bit. The tint meter "slides down over the top of the glass and shoots the laser through it to determine the amount of light transmission through it."

Officer Kevin Folmar with the Wichita Falls Police Department testified that he had been with the department for twelve-and-a-half years. During his time at the department, he had spent almost three years on patrol, seven years in narcotics, and he was currently assigned to the training unit. Officer Folmar testified in detail about his experience and training in narcotics. He testified that handguns are typically carried by drug dealers, not drug users. When asked about the one-inch bags that were discovered in Stevens's coat, Officer Folmar responded, "usually when someone is in possession of this type of—of packaging, it would indicate that they could be in the business of selling narcotics, packaging it for resale." Officer Folmar also testified that 5.85 grams is more than a drug user typically buys at one time, and that a single usage would be anywhere from .1 to .2 grams. On cross-examination, Officer Folmar's response to the question of whether scales are an important factor in determining whether someone is dealing drugs was,

> It could be. I mean, if you had a large amount of drugs and scales, then yes, that would indicate to me that they were probably selling it. Like in this case, he had a large amount of drugs and baggies. That to me indicates he was selling with—you know, without the presence of scales.

Officer Folmar was also asked, as an expert in the area of narcotics, what it would be indicative of if someone had in his possession: (1) a semiautomatic gun containing a magazine with six bullets, (2) numerous one-inch Ziploc

6

baggies, (3) very little or no money, and (4) two eight-ball packages of cocaine packaged separately. In response, Officer Folmar stated,

> It would indicate to me that the—due to the presence of the baggies, the presence of the gun, the presence of the amount of cocaine that we're talking about, in my opinion I would say that he was possessing that with the intent to distribute. And just because there—there is not a presence of money, could be maybe he just made the purchase and he used up all the money that he had to make the purchase.

At the close of trial, the jury found Stevens guilty of the offense of possession of a controlled substance with intent to deliver. After a hearing, the jury assessed punishment at thirty-five years' confinement and a fine of $5,000; the trial court sentenced Stevens accordingly. This appeal followed.

### III.  Motion to Suppress

In his first issue, Stevens asserts that the trial court erred by denying his motion to suppress.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no

pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party

8

timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id*. Once the defendant has made this showing,

9

the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id*. at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

An officer has probable cause to stop and arrest a driver if he observes the driver commit a traffic offense. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); *see State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd). A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Ford*, 158 S.W.3d at 492. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

10

## C.  Analysis

Randy argues that the trial court erred by denying his motion to suppress evidence because Officer Powell and Officer Sanchez lacked probable cause to stop his vehicle.  Stevens's argument and legal authority, however, discuss reasonable suspicion, not probable cause.  In response, the State argues that to the extent Stevens asserts a "probable cause" argument it should be overruled because the correct standard is reasonable suspicion, and that to the extent Stevens asserts a "reasonable suspicion" argument it too should be overruled on the basis that (1) he failed to preserve his complaint for review or (2) there was reasonable suspicion to justify the stop.

At the suppression hearing, both Officer Powell and Officer Sanchez testified that they had initiated the traffic stop based on their belief that the window tint on Stevens's vehicle was in violation of the transportation code. Thus, the State's burden was to demonstrate that reasonable suspicion, not probable cause, existed to justify the stop. *See Ford*, 158 S.W.3d at 492.  In construing Stevens's argument as one addressing reasonable suspicion, the State argues that Stevens has failed to preserve this complaint for review. However, assuming without deciding that Stevens has preserved this argument, we hold that Officer Powell and Officer Sanchez testified to specific, articulable

11

facts that would lead them to reasonably conclude that Stevens was committing a traffic violation.

The transportation code provides that a person commits an offense that is a misdemeanor if "a person . . . places on or attaches to the windshield or side or rear window of a motor vehicle a transparent material that alters the color or reduces the light transmission." Tex. Transp. Code Ann § 547.613(a)(2) (Vernon Supp. 2009).

Stevens argues that the purpose of the window tint law "deals with being able to see into a vehicle from the outside." He claims that Officer Powell's testimony that Stevens's vehicle had been traveling in the opposite direction, resulting in Officer Powell's observing the illegal tint on the passenger side window through the front and driver's side windows, is insufficient to justify reasonable suspicion. That is, Officer Powell never testified that he had observed the passenger window from the outside prior to the stop. Nor did the State provide any evidence that the requisite acceptable percentages for light transmission is the same for both inside and outside a vehicle. Stevens, however, cites to no authority in support of his arguments, nor are we aware of any.

As previously mentioned, both Officer Powell and Officer Sanchez testified during the suppression hearing that they had stopped Stevens for what

12

they believed was illegal tint on the passenger side window of his vehicle. Officer Sanchez specifically testified that he had noticed a "silver Cadillac with extremely dark tint on the front passenger widow." Both Officer Powell and Officer Sanchez testified that it had been "clear" and "sunny" when they noticed the tint. When asked whether they had the ability to test the tint of a vehicle without stopping the vehicle, both officers responded that, other than personal experience, the only way to test the window tint on a vehicle is to stop it and use a tint meter. When questioned about their experience, Officer Powell testified that he had written "numerous tickets" for illegal window tint, and Officer Sanchez stated that he had written tickets for illegal window tint on "many occasions." Based on these specific, articulable facts, we hold that Officer Powell and Officer Sanchez had reasonable suspicion to believe that Stevens was committing a traffic violation. *See Tex. Dep't of Pub. Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex. App.—Dallas 2001, no pet.); *see also Tex. Dep't of Pub. Safety v. Chang*, 994 S.W.2d 875, 877 (Tex. App.—Austin 1999, no pet.) (stating if an officer has a reasonable basis for suspecting a person has committed a traffic offense, the officer may legally initiate a stop). Therefore, the trial court did not err by denying Stevens's motion to suppress. Accordingly, we overrule Stevens's first issue.

## IV.  Factual Sufficiency

In his second issue, Stevens challenges the factual sufficiency of the evidence to support his conviction.  Specifically, Stevens argues that the evidence is factually insufficient "to prove beyond a reasonable doubt [that he] possessed cocaine with the *intent to deliver*."

## A.  Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.  *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict.  *Watson*, 204 S.W.3d at 417.

14

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246. Evidence is always factually sufficient when it preponderates in favor of the conviction. *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

**B. Applicable Law**

To establish an intent to deliver, the State must prove that the accused intended to transfer, actually or constructively, a controlled substance to another. Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp. 2009), § 481.112(a) (Vernon Supp. 2009). Intent to deliver may be proved by circumstantial evidence. *Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.) (citing *Rhodes v. State*, 913 S.W.2d 242, 251 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App.), *cert. denied*, 522 U.S. 894 (1997)). Additionally, intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which they were packaged. *Rhodes*, 913 S.W.2d at 251. Expert testimony may be introduced to prove intent to deliver. *Jordan*, 139 S.W.3d at 726.

Courts use several factors when determining intent to deliver, including the following: (1) the nature of the location where the defendant was arrested; (2) the quantity of drugs the defendant possessed; (3) the manner of packaging the drugs; (4) the presence or absence of drug paraphernalia for either use or sale; (5) the defendant's possession of large amounts of cash; and (6) the defendant's status as a drug user. *Id.*; *see also Brown v. State*, No. 02-04-00564-CR, 2006 WL 412466, at *3 (Tex. App.—Fort Worth Feb. 23, 2006, no pet.) (mem. op., not designated for publication) (applying "*Jordan* factors" in legal and factual sufficiency analysis).

## C.  Analysis

Stevens argues that the evidence is factually insufficient to support his conviction for possession with intent to deliver because the evidence as applied to the *Jordan* factors is either too weak or nonexistent. Specifically, Stevens argues that: (1) while he was arrested in what the officers called a "gang affiliated area," the officers did not testify that it was also an area for high drug activity, (2) 5.85 grams of cocaine does not necessarily prove an intent to deliver, (3) the cocaine was not broken down into individual units for resale, (4) although there were multiple small baggies found in Stevens's coat, there was no evidence of other drug paraphernalia—such as scales, (5) there was no cash

16

found on his person or in the vehicle, and (6) there is no evidence as to whether he is or is not a drug user.

As recounted above, the State adduced the following evidence relevant to the issue of intent: Officer Powell discovered 5.85 grams of cocaine in Stevens's coat pocket; the expert testified that 5.85 grams is more than a drug user would typically buy at one time; the weight of a single usage is .1 or .2 grams, meaning 5.85 grams was sufficient to provide a single usage for up to 58 individual drug users; multiple one-inch Ziploc baggies, commonly used to resell narcotics, were found in Stevens's coat pocket; a loaded .25 semiautomatic pistol was found in Stevens's coat; it is common for drug dealers, but not drug users, to carry handguns; and the expert testified that the lack of money on Stevens's person might have been the result of Stevens having just purchased the cocaine.

As the trier of fact, the jury was the sole judge of the weight of the evidence. *Johnson*, 23 S.W.3d at 9. While the evidence or lack of evidence cited by Stevens may be relevant to the factors listed in *Jordan*, it does not, when considered in a neutral light alongside all of the other evidence, so tip the scales in Stevens's favor as to render the evidence of intent to deliver factually insufficient. *See Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (stating that the number of *Jordan* factors that are

17

present is not as important as the "logical force" the factors have in establishing the elements of the offense).  That is, the evidence supporting the intent for delivery is not so weak that the jury's determination was clearly wrong or manifestly unjust.  Therefore, we hold that the evidence, when viewed in a neutral light, is factually sufficient to support Stevens's conviction.  Accordingly, we overrule Stevens's second issue.

## V.  Conclusion

Having overruled both of Stevens's issues, we affirm the trial court's judgment.


PER CURIAM

PANEL:  MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 18, 2010